Ronald J. McBRIDE and Vicki L. McBride, et. al., Appellants–Petitioners,

v.

BOARD OF ZONING APPEALS OF the EVANSVILLE–VANDERBURGH AREA PLAN COMMISSION, et. al., Appellees–Respondents.

No. 82A01–9012–CV–508.

Court of Appeals of Indiana, First District.

Oct. 16, 1991.

Leslie C. Shively, Noffsinger, Price, Bradley & Shively, Evansville, for appellants-petitioners.

Cedric Hustace, Bowers, Harrison, Kent & Miller, Evansville, for Board of Zoning Appeals of Evansville–Vanderburgh County.

Gerald H. Evans, Donald R. Wright, Wright, Evans & Daly, Evansville, for Browning–Ferris Industries of Indiana, Inc.

William B. Combs, Evansville, for Estate of Ervin F. Lipper, by Jeffrey L. Meyer, Personal Representative and Individually.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Ronald J. McBride and Vicki L. McBride, et. al. ("McBride") appeal a trial court judgment affirming the determination of the Board of Zoning Appeals of Evansville–Vanderburgh Area Plan Commission ("BZA"), which granted a special use classification for the expansion of a sanitary landfill facility owned by Browning–Ferris Industries of Indiana, Inc. ("Browning"). The expansion would be located on property owned by the Estate of Ervin F. Lipper ("Lipper"), who is represented in this appeal by the personal representative, Jeffrey L. Meyer ("Meyer"). We affirm.

1. We note that our consideration of the issues has been hampered by the parties' failure to present concise statements of the facts relevant

## ISSUES

We restate the issues on appeal as:

1. Did McBride waive any alleged procedural errors in the Hearing by not objecting to alleged irregularities at the Hearing?

2. Did the BZA properly adopt findings of fact supporting its decision at the Hearing?

3. Did McBride fail to show any alleged improper contact between Browning and BZA members prior to the Hearing?

## FACTS [1]

Browning and Meyer (hereinafter collectively referred to as "Browning") filed an application with the BZA on February 19, 1990, for a special use classification for a sanitary landfill, solid waste landfill and accessory uses on property owned by Lipper's estate, which was zoned for agricultural uses. Browning already operated a sanitary landfill on land adjacent to the area in dispute. Browning's operations are closely regulated by state agencies, including the Indiana Department of Environmental Management ("IDEM") and the Indiana Department of Natural Resources ("IDNR"). The special use classification at issue here is only the first hurdle that Browning must cross in expanding its operation. Its proposal must also be approved by various state agencies, including IDEM and IDNR, before waste disposal in the expansion area may begin.

On or about March 28, 1990, Browning sent an informational packet regarding the proposed landfill expansion to the Area Plan Commission of Evansville–Vanderburgh County ("Area Plan Commission"). The Area Plan Commission provides administrative support to the BZA.

Sometime between the Area Plan Commission's receipt of Browning's informational packet and the public hearing on the special use permit on April 5, 1990 ("Hear-

to our review. *See* Ind. Appellate Rule 8.3(A)(5).

ing"), the Area Plan Commission sent packets of information regarding the proposed landfill expansion to BZA members. These packets included information from Browning, a staff field report, a letter from a soil conservation officer, a letter from Valley Watch, a letter from West Side Improvement Association, and a document concerning new legislation.

Attorney Edward Johnson ("Johnson") represented McBride before the BZA regarding the special use application. The Hearing was a special meeting at which the only item on the agenda was the application for special use classification at issue in this review. Prior to the Hearing, Johnson went to the BZA offices on approximately three separate occasions to review Browning's application and other relevant documents. In these visits, Johnson did not see any rules or regulations regarding the procedures to be utilized for the conduct of a public hearing; he was not given, in printed form, any rules or regulations regarding the conduct of such a hearing. However, Johnson also admits that he never requested any such information.

Prior to the Hearing, Marian Hite ("Hite"), Chairman of the BZA, contacted Johnson and informed him that each side would be limited to thirty (30) minutes at the Hearing for the presentation of evidence. Johnson at that time requested additional time to present his evidence, but Hite denied his request.

On the evening of April 5, 1990, Johnson again spoke with Hite and asked for additional time to present evidence for McBride. Hite denied his request. As the Hearing commenced, Hite announced that each side would be limited to thirty (30) minutes for the presentation of evidence, and gave other general instructions regarding the conduct of the Hearing. The record is unclear regarding how the time limit for this particular hearing was set; normally, each side in a hearing of this nature is allowed ten (10) minutes to present evidence. Hite also outlined the

criteria that would have to be met for Browning's application to succeed. At the Hearing, each side was initially allowed its thirty (30) minutes to present evidence. Thereafter, BZA members asked for additional information to clarify certain aspects of the presentations. Much of the additional information was gleaned from Browning's representatives. Other special interest groups and governmental agencies also made presentations. Petitions were submitted containing approximately 3,700 signatures of persons who opposed Browning's application.

At the Hearing's conclusion, the BZA voted by a 4–2 margin to grant Browning's application, subject to seventeen (17) conditions. No findings of fact were adopted at that meeting. Johnson did not object to either the length of time allotted for his presentation or the lack of factual findings adopted at the Hearing.

On May 4, 1990, McBride filed a petition for writ of certiorari and judicial review challenging the granting of the special use classification. Among the errors cited by McBride were the BZA's failure to make specific findings of fact in support of its decision,[2] BZA's failure to adopt and promulgate rules of procedure for the conduct of the Hearing,[3] and improper communications with BZA members prior to the Hearing.[4]

On June 28, 1990, BZA filed a transmittal of record of proceedings and attached draft findings of fact from the Hearing. On July 19, 1990, BZA adopted the findings of fact in support of its decision at the Hearing. Section 153.132 of the Code of Ordinances of Vanderburgh County requires that notice of a public hearing regarding a special use application be given to all abutting property owners and by legal advertisement twelve (12) days in advance of the hearing. The only notice given regarding the July 19, 1990 meeting was the pleadings of the pending court action served on Johnson. On July 20, 1990, the findings of

---

**2.** IND.CODE § 36–7–4–915.

**3.** IND.CODE § 36–7–4–916.

**4.** IND.CODE § 36–7–4–920.

fact were transmitted to the trial court as a supplemental record.

On or about August 8, 1990, the BZA filed an affidavit of the Executive Director of the Area Plan Commission. Attached to the affidavit were rules of procedure for BZA public hearings that were adopted in September of 1981. A pleading submitted by BZA with the affidavit admits that the written procedural rules were not made known to or relied on by any of the Hearing's participants. BZA stated that the rules were submitted to apprise the court of their existence.

On September 25, 1990, the trial court conducted a hearing on McBride's petition for writ of certiorari for review of the BZA's decision. On November 14, 1990, the trial court issued its judgment, including findings of fact and conclusions of law, affirming the BZA's decision granting Browning's application for special use classification. This appeal ensued.

Other relevant facts will be stated in our discussion of the issues.

## DISCUSSION AND DECISION

In examining a decision of a county board of zoning appeals to determine whether it was incorrect as a matter of law, a trial court does not conduct a trial de novo and does not substitute its decision for that of the board; our review of a trial court's ruling on review of such a decision is governed by the same considerations. *Whitesell v. Kosciusko County Board of Zoning Appeals* (1990), Ind.App., 558 N.E.2d 889, 890. Unless the BZA's decision was illegal, it must be upheld; in essence, an abuse of discretion standard applies. *Id.* We cannot reweigh evidence or substitute our discretion for that of the BZA. *City of Bloomington v. Delta Treatment Center* (1990), Ind.App., 560 N.E.2d 556, 558. We are governed by the presumption that an agency's decision is correct in view of its expertise. *Id.* at 557. Thus, McBride labors under a heavy bur-

den in urging us to overturn the BZA's decision.

*Issue One*

McBride first asserts that the trial court erred in finding that McBride waived errors regarding the Hearing's procedure. We find that McBride failed to preserve any alleged errors.

Objections or questions which have not been raised in the proceedings before the administrative agency will not be considered by this court on review of the agency's order. *Dorozinski v. Review Board* (1951), 121 Ind.App. 367, 369, 98 N.E.2d 911, 911. Therefore, McBride has waived any procedural errors by failing to preserve the issues before the BZA. However, even if McBride had preserved any alleged errors, his claim would still fail. *See Board of Zoning Appeals of New Albany v. Koehler* (1963), 244 Ind. 504, 513, 194 N.E.2d 49, 54 (where a person seeks to challenge the constitutionality of a zoning ordinance as applied to his property, the issue must first be presented to the board of zoning appeals); *see also Children's Home v. Area Planning Commission of Franklin County* (1985), Ind.App., 486 N.E.2d 1048, 1052 (issues not raised in writ of certiorari to appeal zoning board decision cannot be first raised in court of appeals).

Because a zoning board is a body usually composed of persons without legal training, courts are reluctant to impose rigid technical requirements upon their procedure as long as they are orderly, impartial, judicious, and fundamentally fair. *Boffo v. Boone County Board of Zoning Appeals* (1981), Ind.App., 421 N.E.2d 1119, 1129. Thus, unless the procedures used by the BZA upon which the Hearing's ultimate outcome was based were somehow not orderly, impartial, judicious or fundamentally fair, they will not be held to be contrary to law. *Id.* We cannot say that BZA's procedures fail to meet this standard. In 1981, BZA adopted rules of procedure as required by I.C. § 36–7–4–916(a)(4).[5] Al-

---

**5.** I.C. § 36–7–4–916(a)(4) provides:

"Sec. 916. (a) The board of zoning appeals shall adopt rules, which may not conflict with

though these rules were not disseminated prior to or at the Hearing, such is not required by statute.[6] Additionally, Hite informed the Hearing's participants of the procedures the BZA would employ for consideration of Browning's application prior to the Hearing. McBride concedes that both sides were given the same amount of time for their initial presentations, but makes much of the disparity in time needed to answer the BZA's questions following the presentations. However, BZA members were entitled and indeed obligated to clarify any issues that remained unclear prior to voting on the application. The fact that most of the inquiries were directed to Browning does not indicate that the Hearing was somehow not orderly, impartial, judicious, or fundamentally unfair. McBride shows no error.

*Issue Two*

Next, McBride asserts that BZA's decision must be reversed because BZA failed to make findings of fact forming the basis of its decision at the Hearing until July 19, 1990, over three months after the Hearing. We disagree.

 For reasons that exist independently of statute, boards of zoning appeals are required to set out findings of fact which support their determinations to make possible an adequate judicial review of administrative decisions. *Bridge v. Board of Zoning Appeals* (1979), 180 Ind.App. 149, 152, 387 N.E.2d 99, 101. Moreover, our statutes require that the BZA make written findings of fact. I.C. § 36–7–4–915.[7] However, the adoption of administrative

findings is not required to be made at the same meeting at which the evidence is heard. *Habig v. Harker* (1983), Ind.App., 447 N.E.2d 1114, 1117. It is true that the BZA adopted its findings of fact several months after the Hearing; however, under our deferential standard of review, we cannot say that this fact alone warrants reversal.[8]

McBride urges us to follow this court's reasoning in *Metropolitan Board of Zoning Appeals v. Froe Corp.* (1965), 137 Ind. App. 403, 209 N.E.2d 36. However, our reading of *Froe* shows that the facts of the two cases are clearly distinguishable. In *Froe*, we found the BZA's procedure deficient because the findings of fact and decision were made by only two of the four members who conducted the evidentiary hearing regarding the application. *Id.* at 410–411, 209 N.E.2d at 40. In McBride's case, however, the decision was rendered by the BZA members who heard the evidence on the same date on which the evidence was heard; only the findings of fact were later added to the record. Thus, McBride's reliance on *Froe* is misplaced, and BZA's adoption of the findings of fact was proper.

*Issue Three*

 Finally, McBride alleges that Browning improperly communicated with BZA members prior to the Hearing in violation of I.C. § 36–7–4–920(g). We find that no improper contact occurred.

I.C. § 36–7–4–920(g) states in full:

"A person may not communicate with any member of the board before the

---

the zoning ordinance, concerning:
 (4) the conduct of hearings...."

**6.** McBride makes much of the BZA's failure to provide McBride with any information or guidelines regarding the Hearing's procedure. However, we note that McBride's counsel examined documents pertaining to the Hearing on several occasions and did not request to view any such guidelines. Record at 505. McBride cannot challenge the rules' lack of availability when McBride never requested to examine the rules.

**7.** I.C. § 36–7–4–915 read in full:

"Board of zoning appeals; minutes and records Sec. 915. The board of zoning appeals shall

keep minutes of its proceedings and record the vote on all actions taken. All minutes and records shall be filed in the office of the board and are public records. The board shall in all cases heard by it make written findings of fact."

**8.** Furthermore, McBride failed to object to the BZA's failure to make its findings of fact until July, although it had notice of the July meeting at which such findings would be voted upon through service of a filing to supplement the record of the proceedings on June 28, 1990. McBride cannot now protest the delay in adopting findings, despite McBride's reliance on the "10–day rule" contained in the BZA's procedural rules. *See Issue One.*

hearing with intent to influence the member's action on a matter pending before the board. Not less than five (5) days before the hearing, however, the staff (as defined in the zoning ordinance), if any, may file with the board a written statement setting forth any facts or opinions relating to the matter."

Browning did not submit the information directly to BZA members but to the Area Plan Commission, which then transmitted the information to BZA members as part of a large packet of information.[9] A series of cases beginning with *Board of Zoning Appeals v. Standard Life Insurance Co.* (1969), 145 Ind.App. 363, 251 N.E.2d 60, *trans. denied,* is persuasive. In *Standard,* we held that a metropolitan planning department executive director's statement regarding a variance application could be considered by the zoning board although it was not subject to cross examination and was "largely in the nature of opinion." *Id.* at 370, 251 N.E.2d at 63–64. This court reasoned that since the opposing party in the variance proceeding had access to the statement prior to the hearing and though such statements are not entitled to as much weight or credit as direct testimony or authenticated documentary evidence, such statements are nevertheless not inadmissible. *Id.*

Similarly, the documents to which McBride objects were submitted in a packet of materials to BZA members by the Area Plan Commission and the "evidence" therein was not subject to cross examination. As in *Standard,* McBride had access to the information in dispute, and could have asked to supplement the informational packet with additional information it supplied, but chose not to do so. Moreover, we note that the information to which McBride objects was not submitted to BZA members in isolation or highlighted in any manner; indeed, other groups' statements and opinions, including those of the mayor of Evansville, the Metropolitan Chamber of Commerce, the West Side Improvement Associ-

ation, Valley Watch, Inc., and numerous petitions in opposition to the proposed application, were submitted along with Browning's information. The Area Plan Commission staff, when distributing the information to the BZA members, included a note questioning several of Browning's statements in its materials submitted. Thus, we find that no improper contact occurred, and that Browning's submitted information was not given undue emphasis or favor when the Area Plan Commission submitted the informational packets to BZA members. *See also Speedway Board of Zoning Appeals v. Popcheff* (1979), 179 Ind.App. 399, 385 N.E.2d 1179 (boards of zoning appeals may consider recommendations by the Metropolitan Development Commission); *Speedway Board of Zoning Appeals v. Standard Concrete Materials, Inc.* (1971), 150 Ind.App. 363, 276 N.E.2d 589 (staff recommendations may be considered by boards of zoning appeals).

Affirmed.

BAKER and MILLER, JJ., concur.

---

**9.** If Browning had submitted its information directly to BZA members, as McBride seems to allege in the briefs, a more troublesome issue would arise. However, because Browning sub-

mitted the information to the Area Plan Commission, which in turn disseminated it to BZA members, we leave this question for another day.