CITY OF HOBART COMMON
COUNCIL, Appellant–
Respondent,

and

School City of Hobart and Northwest
Indiana Special Education Cooper-
ative, Appellants–Intervenors,

v.

BEHAVIORAL INSTITUTE OF
INDIANA, LLC, and 61st Avenue
Building, LLC, Appellees–Petitioners.

No. 45A03–0201–CV–33.

Court of Appeals of Indiana.

March 17, 2003.

George T. Patton, Jr., Monica J. Conrad, Adrian S. Allen, Bose McKinney & Evans LLP Indianapolis, Indiana, Attorney for Appellant, School City of Hobart & North-west Indiana Special Education Cooperative.

John P. Bushemi, John P. Bushemi & Associates, Merrillville, Indiana, Attorney for Appellant, City of Hobart Common Council.

Kathleen Cekanski–Farrand, South Bend, Indiana, Attorney for Appellant, City of South Bend Common Council.

David C. Jensen, Eichhorn & Eichhorn, Hammond, Indiana, Attorney for Appellees.

## OPINION

MATHIAS, Judge.

The Behavioral Institute of Indiana ("Institute") petitioned the City of Hobart ("Hobart") for a land use variance to operate a sixty-bed, for-profit, residential treatment facility in an area of Hobart zoned "R–2 single-family residential." The Hobart Board of Zoning Appeals ("HBZA") conducted a hearing on the Institute's proposed land use variance, and voted unanimously to send a favorable recommendation to the City of Hobart Common Council ("Council") pursuant to Indiana Code section 36–7–4–918.6.[1] Despite this positive recommendation from the HBZA, the Council conducted hearings and voted five-to-one to deny the proposed land use variance.

The Institute timely filed a petition for writ of certiorari seeking trial court review of the Council's denial of its requested land use variance. After reviewing the record and depositions submitted by the Institute, the trial court found that there was substantial evidence to meet the statutory requirements for a land use variance set forth in Indiana Code section 36–7–4–

---

1. Ind.Code § 36–7–4–918.6 (1997).

918.4,[2] and that the hearings conducted by the Council violated the Institute's constitutional rights of due process and equal protection of law. For this reason, the trial court reversed the Council's rejection of the Institute's requested land use variance and approved the HBZA recommendation of the land use variance.

Hobart and the School City of Hobart in conjunction with the Northwest Indiana Special Education Cooperative ("the Public Schools") now appeal the judgment of the trial court.[3] These Appellants present the following consolidated and restated issues for review:

I. Whether the procedural protections of due process apply to land use variance proceedings before common councils taken pursuant to Indiana Code section 36–7–4–918.6;

II. Whether the Council conducted the Institute's land use variance hearing in accordance with the requirements of due process;

III. Whether the trial court applied the appropriate standard of review for land use variance proceedings; and

IV. Whether the trial court was within its discretion when it approved the HBZA recommendation of the Institute's proposed land use variance.

We find that the procedural protections of due process apply to land use variance proceedings under Indiana Code section 36–7–4–918.6, and that the Council's pro-

ceedings pursuant to Indiana Code section 36–7–4–918.6 did not satisfy the requirements of due process. But, we also hold that the trial court did not apply the correct standard of review and that the trial court should not have approved the HBZA recommendation of the Institute's proposed land use variance. We therefore affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

### Facts and Procedural History

On December 28, 2000, the Institute filed a petition for a land use variance with Hobart. This petition sought to operate a sixty-bed, for-profit, court-ordered, "level 3" child placement facility licensed by the State Division of Family and Children in an existing building located at 101 West Avenue, Hobart, Indiana ("Facility").[4] This address is located in an "R–2 single-family residential" zone. An "R–2 single-family residential" zone's permitted uses include: single-family dwellings, community uses, parks, churches, schools, libraries, and uses incidental to the principal permitted uses. Hobart, Ind. Zoning Code 24–23.

This building had previously been occupied by Charter Medical Corporation ("Charter") under a "conditional use" approved by the Council. Charter had used the building to operate a sixty-bed psychiatric hospital, which provided short-term inpatient psychiatric care. Charter ceased operations in the building in 1999, and by operation of law, the building's zoning clas-

---

2. Ind.Code § 36–7–4–918.4 (1997).

3. The City of South Bend filed an amicus curiae brief in support of Hobart and the Public Schools.

4. The type of children that a "level 3" child treatment facility would house include children that are "not actively psychotic or sui-

cidal, with possible transient psychosis, . . . moderate to low risk of harm to self or others, moderate or low risk of suicide, fragile emotional state, easily overwhelmed by feelings, requiring close supervision and monitoring, may require medication monitoring and adjustments, [and] moderate risk for elopement." Appellants' App. p. 338.

sification reverted back to "R–2 single-family residential" twelve months after Charter's use ceased.

On January 11, 2001, the HBZA conducted a preliminary hearing on the Institute's land use variance petition and set the matter for public hearing. Prior to the public hearing, the Institute submitted various items in support of its proposed land use variance to the HBZA. Appellants' App. pp. 319, 332–38, 340–45, 355–56, 361–66. Parties opposing the land use variance also submitted documents. Documents from parties opposing the land use variance included information indicating that the Institute's opening of the Facility would have a substantial educational cost impact on the Public Schools because the Institute's residents would have behavioral and psychiatric needs that require special education treatment under the law. Appellants' App. pp. 321–30, 347, 349, 351–53, 358–59.

On February 8, 2001, the HBZA opened the public hearing, but only three of the five HBZA members were present. Near the beginning of the meeting, one of the three members received an emergency call and was forced to leave. As a result, a quorum was no longer present, and the meeting had to be rescheduled for February 20, 2001.

During this interim period, the Institute submitted additional supporting documentation to the HBZA. Appellants' App. pp. 377–78, 401–06. Parties opposing the use variance also submitted additional documents to the HBZA during this time. These documents included a letter from the Merrillville Community School Corporation, a letter from School City of Hobart, and a letter from Hobart City Engineer Stephan Truchan ("Engineer Truchan"). Appellants' App. pp. 374–75, 398–99, 416.

On February 20, 2001, with six-of-seven Council members present, the HBZA re-sumed the public hearing on the Institute's requested land use variance. The HBZA hearing included extensive presentations of information from those opposed to and those in favor of the petition. Two citizens testified in support of the land use variance, twelve documents were submitted in favor of the land use variance, twelve documents were submitted in opposition to the land use variance, and a six-page, seventy-five-signature petition opposing the land use variance was also presented. Appellants' App. pp. 540–43, 548–49.

Monica Conrad ("Conrad") testified on behalf of the Public Schools, indicating that the Public Schools would encounter substantial costs if the land use variance were granted because the Institute would house residents with behavioral and psychological disorders requiring the Public Schools to provide special educational entitlements to those residents. Appellants' App. pp. 396, 429, 531–38. Conrad also testified that the Hoosier Boys Town operates a "level 3" residential treatment facility with forty-three empty beds indicating there was no need for residential treatment bed space; Conrad argued that this excess capacity indicated that there would be a substantial likelihood of the Institute's financial failure. *Id.*

City Police Chief Taylor testified that the Institute's proposed use of the Facility posed no danger to the public. Appellants' App. 579–80. HBZA member Zimmerman presented a Hobart Police Department call listing, which he received from Councilman Clausen, showing that the Hobart Police responded to sixty-three calls from the Facility between April of 1998 and February of 2001. *See id.*

Finally, Engineer Truchan testified that he believed that three of the five statutory land use variance requirements under Indiana Code section 36–7–4–918.4 were

not satisfied. Engineer Truchan's testimony concentrated on Indiana Code sections 36–7–4–918.4(1) and 36–7–4–918.4(3). He specifically testified that (1) the requested land use variance would be injurious to the public safety and the general welfare, based on previous police responses and the anticipated cost impact on the Public Schools, and (2) the need for the land use variance did not arise from a condition of the building itself because the building could easily be modified to office or medical uses. Appellants' App. pp. 575–77.

The HBZA concluded the public hearing and voted on the petition. A motion to deny the petition failed. The HBZA then added the requirement that the Institute obtain a $1,000,000 performance bond to provide education for the Institute's residents should the Institute's business fail or should the State order the Public Schools to provide the Institute's educational requirements. After the addition of this performance bond requirement, the HBZA voted unanimously to recommend the land use variance to the Council.

Following the HBZA meeting, but prior to the February 21, 2001 Council meeting, Engineer Truchan distributed a detailed memorandum titled "Hobart Advisory Board of Zoning Appeals Proposed Findings of Fact for Petition for a Use Variance" to members of the Council. Although this document contained elements of Engineer Truchan's previous oral and written testimony, it also included previously unstated factual assertions concerning the proposed land use variance's capacity to diminish the surrounding property value and pose a danger to the surrounding residents. In addition to this memorandum, Engineer Truchan distributed two photographs of holes in the fence of a juvenile facility located in Crown Point, Indiana. Appellants' App. pp. 445–47.

On February 21, 2001, the Council conducted a public meeting to consider the proposed land use variance. During the meeting, Councilwoman Juzwicki presented to the Council a petition signed by twelve residents opposed to the land use variance, the favorable HBZA certification was presented to the Council, and the Council questioned the Institute's Dr. Ruff. Questions from the Council were primarily concerned with public safety. Following the meeting, the Council voted five-to-one to reject the Institute's requested land use variance.

On March 13, 2001, the Institute filed a petition for writ of certiorari with the trial court, seeking an order directing the Council to grant its land use variance. The Institute submitted thirteen depositions with this writ. These depositions included evidence that: (1) the Institute had no notice of some of the information that Engineer Truchan submitted to the Council, (2) Councilwoman Juzwicki works as a non-tenured, non-contractual, media center paraprofessional for the Public Schools, (3) Councilwoman Juzwicki's husband works as Director of Security for the Merrillville Public Schools, (4) there was contact between Councilwoman Juzwicki and members of the Public Schools concerning the Institute's petition before the Council meeting, and (5) Councilman Clausen submitted the record of the police calls to the HBZA prior to the HBZA meeting.

The trial court found that there was substantial evidence to meet the statutory requirements for a land use variance, and that the hearings conducted by the Council violated the Institute's constitutional right of due process. The trial court reversed the Council's rejection of the land use variance and approved the HBZA recommendation of the land use variance. The Public Schools and Hobart now appeal the decision of the trial court.

### Discussion and Decision

In our review of the trial court's decision, we must determine: (1) whether the

procedural protections of due process apply to proceedings before the common council taken pursuant to Ind.Code § 36–7–4–918.6; (2) if so, whether the Council's proceedings on the Institute's land use petition conformed to the requirements of due process; (3) whether the trial court applied the correct standard of review; and, (4) whether, under the facts and circumstances, it was proper for the trial court to reverse the Council and approve HBZA recommendation of the proposed land use variance.

## I. Due Process Applies to Proceedings under Indiana Code Section 36–7–4–918.6

### A. *Established Indiana Law*

In Indiana, zoning powers must be executed in accordance with Indiana Code chapter 36–7–4. Ind.Code 36–7–4–201(a) (1998). In Lake and St. Joseph Counties, after reviewing a request for a land use variance, the board of zoning appeals (BZA) of the county must submit a petition to the clerk of the legislative body with either a favorable recommendation, an unfavorable recommendation, or no recommendation at all. Ind.Code § 36–7–4–918.6(c).[5]

1. *In all Indiana counties, the initial adoption of a zoning and rezoning ordinance is a legislative function that is not subject to the requirements of due process.*

■ In the legislative arena, there is no constitutional due process requirement of a neutral decision maker. Rather, the "check" on legislative power is the ballot box. *Perry–Worth Concerned Citizens v. Bd. of Comm'rs of Boone County*, 723 N.E.2d 457, 460 (Ind.Ct.App.2000) (citing *Fail v. LaPorte County Bd. of Zoning Appeals*, 171 Ind.App. 192, 196, 355 N.E.2d 455, 458 (1976)). Thus, when a common council acts in a legislative capacity, it is not subject to the requirements of due process. *Stokes v. City of Mishawaka*, 441 N.E.2d 24, 28–29 (Ind.Ct.App.1982). Zoning or rezoning is a legislative determination, not an administrative or quasi-judicial determination based on fact finding. *See Perry–Worth*, 723 N.E.2d at 460; *see also Hills v. Area Plan Comm'n. of Vermillion County*, 416 N.E.2d 456, 461 (Ind.Ct.App. 1981). However, individual petitions for land use variances, like the one at issue here, are treated quite differently and are considered quasi-judicial proceedings entitled to due process protections.

2. *Indiana law requires that land use variance petitioners receive due process rights before the BZAs.*

■ Indiana Code section 36–7–4–920[6] and Indiana case law require that Indiana boards of zoning appeals ("BZAs") comply with the requirements of due process.[7] Although BZAs are not held to technical legal requirements, they must comply with the constitutional standards of being orderly, impartial, judicious, and fundamen-

---

**5.** Lake and St. Joseph Counties are the only two counties that are governed by this statute. In the other ninety Indiana counties, land use variance petitions are decided exclusively by their BZAs.

**6.** Ind.Code § 36–7–4–920 (1997).

**7.** Ind.Code § 36–7–4–920 states:

(a) The board of zoning appeals shall fix a reasonable time for the hearing of administrative appeals, exceptions, uses, and variances.

(b) Public notice in accordance with Ind. Code § 5–3–1–2 and Ind.Code § 5–3–1–4 and due notice to interested parties shall be given at least ten (10) days before the date set for the hearing.

(c) The party taking the appeal, or applying for the exception, use, or variance, may be required to assume the cost of public notice and due notice to interested parties. At the

tally fair. *McBride v. Bd. of Zoning Appeals of Evansville–Vanderburgh Area Plan Comm'n.*, 579 N.E.2d 1312, 1315 (Ind.Ct.App.1991) (citing *Boffo v. Boone County Bd. of Zoning Appeals*, 421 N.E.2d 1119, 1129 (Ind.Ct.App.1981)). *See also Perry–Worth*, 723 N.E.2d at 460 (citing *Rynerson v. City of Franklin*, 669 N.E.2d 964, 967 (Ind.1996)).

## B. Proceedings under Indiana Code section 36–7–4–918.6.

Unlike Indiana Code section 36–7–4–920, the language of Indiana Code section 36–7–4–918.6 does not list specific procedural protections that the common councils of Lake and St. Joseph Counties must afford land use variance petitioners. Furthermore, there is no case law that has yet addressed the issue of whether the common councils of Lake and St. Joseph Counties must act in accordance with due process when granting or denying a land use variance. Thus, we must, as a matter of first impression, determine whether common councils in Lake and St. Joseph Counties are required to proceed in accordance with due process when conducting land use variance petitions under Indiana Code section 36–7–4–918.6.

1. *The omission of due process rights in Indiana Code section 36–7–4–918.6 is not dispositive.*

■ Appellants maintain that Indiana Code section 36–7–4–918.6 dictates that land use variance petitions before the common council do not require due process protections. Indiana Code section 36–7–4–918.6 states that, "the [BZA] shall submit [use variance proceedings] to the 'legislative body' for approval or disapproval." *Id.* (emphasis added). Appellants assert that Indiana Code section 36–7–4–918.6's use of "legislative body" necessarily implies that land use variance proceedings are to be legislative—and thus, do not require due process protections.

However, the mere characterization of a proceeding before a local government body as "legislative" without further analysis has limited usefulness. *Krimendahl v. Common Council of the City of Noblesville*, 256 Ind. 191, 198, 267 N.E.2d 547, 551 (1971) (although *Krimendahl* held that rezoning was a legislative function, it specifically noted there may be instances when the "legislative" body may perform "quasi-judicial" activities). Thus, though common councils normally serve in a legislative capacity, they may perform quasi-judicial functions. The analysis determining whether the act in question is legisla-

hearing, each party may appear in person, by agent, or by attorney.
(d) The board shall, by rule, determine who are interested parties, how notice is to be given to them, and who is required to give that notice.
(e) The Staff (as defined in the zoning ordinance), if any, may appear before the board at the hearing and present evidence in support of, or in opposition to, the granting of a variance or the determination of any other matter.
(f) Other persons may appear and present relevant evidence.
(g) A person may not communicate with any member of the board before the hearing with intent to influence the member's ac-

tion on a matter pending before the board. Not less than five (5) days before the hearing, however, the staff (as defined in the zoning ordinance), if any, may file with the board a written statement setting forth any facts or opinions relating to the matter.
(h) The board may require any party adverse to any pending petition to enter a written appearance specifying the party's name and address. If the written appearance is entered more than four (4) days before the hearing, the board may also require the petitioner to furnish each adverse party with a copy of the petition and a plot plan of the property.
*Id.*

tive or quasi-judicial centers not on the characterization employed by the statute, but on the type of function actually performed by the common council. *Id.*

■ Appellants also assert that "Home Rule" legislation, as defined by Indiana Code section 36–1–3–2 (1997), requires that due process not be applied to Hobart's Common Council proceedings. Br. of Appellant Public School at 31. In this regard, Indiana Code section 36–1–3–2 states, "the policy of the State is to grant units all the powers that they need for the effective operation of government as to local affairs." *Id.*

We find two problems with Appellants' assertion that the "Home Rule" applies to this case. First, no effective assertion has been made that requiring due process in land use variance proceedings before the common council would result in the ineffective operation of local government—South Bend's Common Council is able to function despite its inclusion of due process rights in its land use variance proceedings. *See* Br. of Amicus Curiae South Bend at 5–7 (setting forth the due process protections accorded by the South Bend Common Council). Second, as stated in *Citizens Gas & Coke Util. v. Sloan,* 136 Ind.App.

297, 309–10, 196 N.E.2d 290, 296 (1964), the characterization of a zoning statute cannot dispense with constitutional requirements of due process. *Id.*

Therefore, whether by design or oversight, the legislative omission of due process protections in Indiana Code section 36–7–4–918.6 is not dispositive.

2. *The Privileges and Immunities Clause of the Indiana Constitution.*

■ The Privileges and Immunities Clause of Article I, Section 23 of the Indiana Constitution requires Indiana Code section 36–4–7–918.6 to be read to include due process protections. Under the Privileges and Immunities Clause, when the legislature singles out one person, or class of persons, to receive a privilege or immunity not equally provided to by others, such classification must be based in the distinctive inherent characteristics, which rationally distinguish the unequally treated class, and the disproportionate treatment accorded by the legislature must be reasonably related to such distinguishing characteristics. *Collins v. Day,* 644 N.E.2d 72, 78–79 (Ind.1994).[8] Second, "any privileged classification must be open to any and all persons who share

---

8. Appellee also correctly asserts that the equal protection clause of the Fourteenth Amendment requires due process protections for land use variance petitioners in Lake and St. Joseph Counties. The Equal Protection Clause of the Fourteenth Amendment provides that no State shall deny to any person within its jurisdiction the equal protection of the law. U.S. Const. amend. XIV, § 1. When applying the Equal Protection Clause, courts must first look to the level of scrutiny to be applied. *Lake County Clerk's Office v. Smith,* 766 N.E.2d 707, 712 (Ind.2002) (citing *Ind. High Sch. Athletic Ass'n Inc. v. Carlberg,* 694 N.E.2d 222, 236 (Ind.1997)). Classifications not involving a "suspect class" or a "fundamental right" are resolved under the "rational basis test." *Lake County,* 766 N.E.2d at 712. This test requires that the classification must be rationally related to a legitimate gov-

ernment end. *Id; see also Durham v. U–Haul Int'l,* 745 N.E.2d 755, 763 (Ind.2001); *Shepler v. State,* 758 N.E.2d 966, 969 (Ind.Ct.App. 2001); *Equicor Dev. Inc. v. Westfield–Washington Twp. Plan Comm'n.,* 758 N.E.2d 34, 37 (Ind.2001) (noting that in the context of a zoning administrative action, a violation of substantive due process rights is demonstrated if the government's actions were not reasonably related to a legitimate state interest).

Applying this precedent to the case at bar, we conclude that Fourteenth Amendment equal protection requires land use variance hearings conducted pursuant to Indiana Code section 36–7–4–918.6 to be consistent with the due process protections enjoyed by the citizens of Indiana's other counties under Indiana Code section 36–7–4–920. The application of the Fourteenth Amendment requires that there be a rational basis for

the inherent characteristics which distinguish and justify the classification, with the special treatment accorded to any particular classification extended equally to all persons." *Id.*

Although one can readily distinguish the citizens of Lake and St. Joseph Counties from the citizens located in the other ninety Indiana counties on the basis of quantity of population, under the test set forth by *Collins*, it is still necessary to show how population is reasonably related to material differences in due process protections. We are aware of no such reasonable relationship.

Appellants argue that imposing due process protections on the Council would improperly require the Councils to act in a quasi-judicial capacity. They cite *Town of Porter v. Brandstetter*, 770 N.E.2d 832 (Ind.Ct.App.2002), *Stokes v. City of Mishawaka*, 441 N.E.2d 24 (Ind.Ct.App.1982), and *Town of Schererville v. Vavrus*, 180 Ind.App. 500, 508–09, 389 N.E.2d 346, 352 (1979), as standing for the proposition that common councils act in a legislative capacity when conducting land use variance proceedings. Br. of Appellant Public School at 16–18.

However, as Appellant Public Schools admit, *Porter* is not on point with the case at bar. Br. of Appellant Public School at 34. In *Porter*, the court ruled that the decision of the town council not to vacate an easement was a legislative act. *Porter*, 770 N.E.2d at 834. *Porter* is readily distinguished from the case at bar. In *Porter*, the town actually had a property interest in the easement, and the local legislative body was merely determining what to do with that property interest—a very common legislative function. In the case at bar, the common councils have no property interest in the land, and they conduct a fact-finding proceeding to determine via statute how the owner of the property in question may utilize his or her property—a common judicial function.

*Stokes* and *Schererville* are also readily distinguishable. *Stokes* involved the passage of a rezoning ordinance, and *Schererville* involved the amendment of a zoning ordinance. *Stokes*, 441 N.E.2d at 28; *Schererville*, 389 N.E.2d at 352. Passing a rezoning ordinance or amending an ordinance is an activity that applies to all people who fall within the ambit of the ordinance—activity commonly associated with legislative procedure. Determining by way of a fact-finding process whether the language of an ordinance covers a particular individual, as done by the land use variance procedures of the Council, is a common quasi-judicial activity.

Therefore, Article I, Section 23 of the Indiana Constitution requires the land use variance petitioners of Lake and St. Joseph Counties to receive the same due process protections enjoyed by land use variance petitioners of the other ninety Indiana counties.

## II. Due Process Protections Before the Council

A. *The requirements of due process for land use variance proceedings under Indiana Code section 36-7-4-918.6.*

The Public Schools contend that if we hold that due process applies to land use

allowing land use variance petitioners in Lake and St. Joseph Counties to be rejected by a hearing without due process protections, while requiring that similar petitioners in the other ninety Indiana Counties may only be rejected after a hearing with due process protections. We see no rational basis for such a distinction. Thus, we hold that the Equal Protection Clause entitles residents of Lake and St. Joseph Counties to exactly the same measure of due process accorded to all other Hoosiers when petitioning for land use variances.

variance proceedings under Indiana Code section 36–7–4–918.6, we should extrapolate the dictates of due process for such proceedings from *Santosky v. Kramer*, 455 U.S. 745, 754, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Reply Br. of Appellant School at 20. In *Santosky*, the Court held that due process protections were determined by balancing three factors: (1) the private interest affected by the proceeding, (2) the risk of error created by the state's chosen procedure, and (3) what is the countervailing government interest in supporting the challenged procedure. *Id.*[9]

However, in light of our supreme court's recent decision in *Municipal City of South Bend v. Kimsey*, 781 N.E.2d 683 (Ind. 2003), we find such analysis unnecessary, and, rather than strike down Indiana Code section 36–7–4–918.6 as unconstitutional, we somewhat awkwardly adopt the due process analysis that Indiana courts have applied to Indiana's other ninety counties in BZAs cases. Such a standard is logical given the similarity between BZAs proceedings and land use variance proceedings under Indiana Code section 36–7–4–918.6, and the fact that the requirement of due process protections is based on equal privileges and immunities analysis.

*B. When conducting a land use variance proceeding, the common council may rely on information outside of the BZA hearing.*

■ Although BZAs are not held to technical legal requirements, their hearings must comply with the constitutional due process standard of being fundamentally fair, impartial, orderly, and judicial. *McBride*, 579 N.E.2d at 1315 (citing *Boffo*, 421 N.E.2d at 1129). The procedures utilized by the BZA are upheld if they are determined to be fundamentally fair, orderly, judicial, and impartial. *See McBride*, 579 N.E.2d at 1315. However, we will accept lower standards in quasi-judicial proceedings in circumstances where it would be unworkable to do otherwise. *State ex rel. Paynter v. Marion County Superior Court, Room No. 5*, 264 Ind. 345, 352, 344 N.E.2d 846, 850 (1976).

■ The Appellants argue at length that the trial court misapplied the law when it held that the Council may not rely on information outside of the HBZA record. If this were in fact what the trial court held, we would be in full agreement with Appellants. However, we find that the trial court held just the opposite. In Conclusion of Law 23(B), the trial court states, "[p]etitioners did not have notice and an opportunity to respond to evidence presented outside of the [HBZA] public hearing." Appellants' App. p. 1197. This

9. We note the recent opinion of our supreme court in *Municipal City of South Bend v. Kimsey, et al*, 781 N.E.2d 683 (Ind.2003), handed down January 15, 2003. In that opinion, the court held that Indiana Code section 36–4–3–13(g) was unconstitutional special annexation legislation because its justification was not inherent to the population range of any county of more than 200,000 but less than 300,000 and did not turn on facts unique to the only county the population range applied to, St. Joseph County. No party in the case before us challenged the constitutionality of Indiana Code section 36–7–4–918.6(c) and we seem to be precluded from considering the constitutionality of a civil statute sua sponte. *Duncan v. Duncan*, 764 N.E.2d 763, 768–69 (Ind.Ct. App.2002) (citing *Chidester v. City of Hobart*, 631 N.E.2d 908, 912–13 (Ind.1994)). For this reason, we must rather awkwardly transfer the statutory due process protections applicable to the ninety Indiana counties under Indiana Code section 36–7–4–920 to the only two counties which fall into the population ranges of Indiana Code section 36–7–4–918.6, Lake County and St. Joseph County. In so doing, we are mindful of the well-recognized legal tenet that "bad facts make bad law."

statement indicates to us that the trial court is recognizing that it would have been proper for the Council to consider information presented outside the HBZA hearing if the Institute would have had notice of this information and an opportunity to respond to it.[10]

In any case, there is nothing in the requirements of due process that would prevent a common council in a use variance proceeding under Indiana Code section 36–7–4–918.6 from considering information outside of the BZA's record.

A. *The Evidence that Engineer Truchan presented to the members of the Council before the February 21, 2001 public meeting violated the Institute's due process right of having notice of information being presented against it and the right to rebut that information.*

 Due process contemplates notice and an opportunity to be heard. *Howard v. Inc. Town of North Judson*, 661 N.E.2d 549, 553 (Ind.1996). Due process also requires the opportunity to present rebuttal evidence. *City of Anderson v. State*, 397 N.E.2d 615, 619–20 (Ind.Ct.App. 1979).

Appellants argue that *Metro. Bd. of Zoning Appeals v. Standard Life Ins. Co.*, 145 Ind.App. 363, 370, 251 N.E.2d 60, 62– 63 (1969), requires the admissibility of evidence even if the evidence was improperly considered by the Council. Reply Br. of Appellant School at 20. In *Metro. Bd.*, the court found that improper statements made to the BZA, which violated Indiana Statute section 53–971, forbidding contact with the BZA before a hearing, were nonetheless admissible.[11] *Metro. Bd.'s* holding was based on the premise that the petitioner in that case had prior access to the improperly admitted statements and knowledge of the facts underlying the statements—in effect, the petitioner in that case had notice and an opportunity to respond to the improperly admitted evidence. *See id.* at 64.

We believe the holding of *Metro. Bd.* is especially applicable to the hybrid nature of the Council's duties in the case before us. If the Institute had notice of the facts underlying the allegations that Engineer Truchan told the Council and an opportunity to respond to those facts, the evidence considered in violation of Indiana Code section 36–7–4–920(g) would not be deemed to have violated the Institute's due process rights, despite the fact that Engineer Truchan's communication with the Council was improper.[12] Finally, we also require evidence that the Council relied on

---

10. We would also note that Conclusion of Law 23(A) states, "[t]he Hobart Common Council relied on materials outside the official record in denying the Petitioner's request for use variance." This statement also does not indicate that the Council may not consider information outside of the HBZA record. Rather, the trial court is indicating that the Council cannot consider anything outside of the "official" record. This prevents the Council from taking into account information that the Institute may have been unaware of and did not have an opportunity to respond to; it does not limit the Council to the HBZA record.

11. Indiana Statute § 53–971 (Burns 1969 Supp.).

12. We would note that *Metro. Bd.* does not stand for the proposition that Indiana Code section 36–7–4–920(g), which prevents contact with the board of zoning appeals before a use variance petition, is irrelevant. Rather, *Metro. Bd.* stands for the proposition that the *remedy* for a violation of Indiana Code section 36–7–4–920(g) will not be exclusion of the evidence unless the violation was such that it deprived a petitioner of his or her due process rights of having notice of the evidence being presented against him or her, and the right to confront or rebut that evidence.

this information in order for the violation to be "material."

Applying this standard, we find that there are elements of Engineer Truchan's "Proposed Findings" that the Institute was neither aware of, nor had the opportunity to rebut. We also agree with the trial court in finding that the Council relied on this information. *See* Appellants' App. pp. 1035–36, 1066–68.[13]

Appellant argues that the Institute was not denied due process because the Institute had constructive notice of Engineer Truchan's submission due to the Institute's awareness of Engineer Truchan's February 20, 2001 opposition to its proposed land use variance. We disagree. Being aware of opposition is not the same thing as being aware of specific facts presented as truth by opposition. Thus, under *Metropolitan Bd.* analysis, the aspects of Engineer Truchan's "Proposed Findings" that the Institute should have been aware of do not violate the Institute's due process right

of notice and rebuttal. However, the aspects of the "Proposed Findings" that the Institute could not have been aware of violated their right of notice and confrontation.

Engineer Truchan's testimony at the February 20, 2001 meeting was merely a brief statement explaining that he believed the land use variance did not meet three out of the five Indiana Code section 36–7–4–918.4 requirements. Appellants' App. p. 432. However, his "Proposed Findings" give detailed reasons why the three out of the five statutory requirements are not met. Appellants' App. pp. 445–47. Because the Institute was unable to respond to these specific factual allegations—not to mention the pictures submitted by Engineer Truchan—and the Council relied on those specific allegations, the trial court was correct in finding that the Council's consideration of this material violated the Institute's due process rights.

**13.** Appellants contend that the trial court improperly admitted the depositions of council members. In support of this contention, they cite *Med. Licensing Bd. of Ind. v. Provisor*, 669 N.E.2d 406, 410 (Ind.1996). *Provisor* holds that, when reviewing legislative actions, the trial court may not admit evidence outside of the administrative record because the trial court is not allowed to inquire into the motives of the legislator. *See id* at 410. However, *Provisor* did not hold that extraneous material may not be considered to determine whether the requirements of due process had been satisfied. Quite the contrary, the statute utilized by *Provisor*, Indiana Code section 4–21.5–5–12 (1993), specifically allows evidence of due process violations to be admitted. *Id.* Furthermore, the case relied on for the holding in *Provisor* specifically states, "[a]t most *Overton Park* suggests that section 706(2)(A) of the APA, which directs courts to ensure that an agency action is not arbitrary and capricious or otherwise contrary to law, imposes a 'general procedural' requirement of sorts by mandating that an agency take whatever steps it needs to provide an explanation that will enable the court to evaluate the

agency's rational at the time of the decision." *Pension Benefit Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 654, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990) (emphasis added).

Given the fact that both the statute relied on in *Provisor* and the case relied on in *Provisor* make the point that a trial court may consider evidence outside the record for procedural purposes, we believe Appellant's reliance on this case is misplaced. We find Indiana Code section 36–7–4–1009 (1997) and *Equicor* to be the proper authority. Indiana Code section 36–7–4–1009 states, "if the court determines that testimony is necessary for the proper disposition of the matter, it may take evidence to supplement the evidence and facts disclosed by the writ of certiorari." *Id. Equicor*, a case dealing with a zoning administrative action, specifically stated, "[a]n inquiry into the 'motive' of an agency action may be proper in some circumstances, notably where there is a claimed violation of rights protected under the Fourteenth Amendment." *Equicor*, 758 N.E.2d at 37 (emphasis added) (citing *John E. Long, Inc. v. Borough of Ringwood*, 61 F.Supp.2d 273, 280 (D.N.J.1998)).

B. *Councilwoman Juzwicki's presence on the Council violated the Institute's due process right to an unbiased and impartial fact finder.*

 Due process mandates a neutral and unbiased fact finder for land use variance proceedings. *Perry–Worth*, 723 N.E.2d at 460 (citing *Rynerson v. City of Franklin*, 669 N.E.2d 964, 967 (Ind.1996)). Due process also requires that administrative bodies may not reach their decisions on the basis of preconceived bias or prejudice. *Couch v. Hamilton County Bd. of Zoning Appeals*, 609 N.E.2d 39, 42 (Ind. Ct.App.1993) (citing *New Trend Beauty Sch. v. Bd. of Beauty Culturist Exam'rs*, 518 N.E.2d 1101, 1104–05 (Ind.Ct.App. 1988)). Biased behavior may be demonstrated by extreme partisan political considerations, personal conflicts of interest and gain, or invidious discriminatory intent. *Equicor*, 758 N.E.2d at 37; *see also City of Mishawaka v. Stewart*, 261 Ind. 670, 677–78, 310 N.E.2d 65, 69 (1974) (holding that it is imperative that a strict test of impartiality be applied to the fact-finding process).

There are several elements of Councilwoman Juzwicki's involvement with the Council meeting that raise suspicions that the Institute was deprived of its due process right to an impartial fact finder. Councilwoman Juzwicki works as a non-tenured, non-contractual, media center paraprofessional for the Public Schools. Her husband works as Director of Security for the Merrillville Public Schools. The Superintendent of the Public Schools contacted Juzwicki on at least two occasions, one of which was the day before the Council meeting. Finally, the Principal of Juzwicki's school also talked to her about the importance of her opposition to the use variance petition. Appellants' App. pp. 1034–38.

There is no evidence in the record indicating that this contact influenced Councilwoman Juzwicki. Furthermore, the file indicates that the Institute was almost certainly aware of the facts that underlie the conversations with Councilwoman Juzwicki. Nonetheless, the aforementioned conversations do not fall within the protection of *Metro. Bd.*.

 *Metro. Bd.* was concerned with a petitioner's due process rights of notice and ability to rebut evidence, while Councilwoman Juzwicki's contacts created a strong impression of undisclosed partiality. Had Councilwoman Juzwicki not worked for School—without a contract in an "at will" employment state—and her husband not worked for the Merrillville Public School, the Public School's contacts with Councilwoman Juzwicki would have fallen under the "safe harbor" provision of Metro. Bd..[14] However, in light of Councilwoman Juzwicki's strong connection to the Public Schools and the Schools' blatant attempt to influence her decision, the only appropriate decision that she could have made regarding the land use variance petition, consistent with the Institute's due

---

14. It should be noted that, although the requirements of Indiana Code section 36–7–4–920(g) should not be violated in the process, we do not require BZA members, or common council members, to attend land use variance meetings completely ignorant of the facts surrounding a particular petition. If such ignorance were required, it is difficult to imagine how a land use variance proceeding in a small, or close-knit, community could func-

tion. *See Paynter*, 344 N.E.2d at 850 (holding that, "we accept lower standards in proceedings that are quasi-judicial in nature in circumstances where it would be unworkable to do otherwise"). *Id.* We require that the respective members who attend these meetings listen to the facts presented and make an honest and fair determination based upon those facts.

process rights, would have been to recuse herself from the proceedings.

C. *Councilman Clausen's submission of a list of police phone calls from Charter violated Indiana Code section 36–7–4–918.6, but did not violate the Institute's due process rights.*

Before the HBZA meeting, Councilman Clausen submitted to HBZA member Zimmerman a list of police calls from the Facility. Appellants' App. pp. 421, 557–58. Indiana Code section 36–7–4–920(g) states that a person may not communicate with any member of the BZA before the hearing with the intent to influence the member's action on a matter pending before the board. *Id.*

It cannot be logically questioned that Councilman Clausen's intent was to influence the HBZA by this action; therefore, the trial court was correct in noting that Indiana Code section 36–7–4–920(g) had been violated. However, we believe that this statutory violation did not amount to a violation of the Institute's due process rights.

Analysis under *Metro. Bd.* indicates that the Institute's due process rights were not violated. The HBZA voted unanimously to approve the Institute's petition despite HBZA's knowledge of this list, and by the time of the February 21, 2001 Council meeting, the Institute had both notice of the list and an opportunity to discredit it. Furthermore, Appellee admits that a police officer also testified at the HBZA meeting regarding the Facility's previous police calls. Br. of Appellee at 5. Thus, even had Councilman Clausen's contact with HBZA member Zimmerman violated the Institute's due process rights, the violation was not material because identical information was obtained through proper procedures. For the aforemen-

tioned reasons, Councilman Clausen's violation of Indiana Code section 36–7–4–920(g) did not hinder the Institute's due process rights.

For all of these reasons, we hold that the statutory due process protections applied to BZA hearings by Indiana case law and Indiana Code 36–7–4–920 also apply to land use variance proceedings pursuant to Indiana Code section 36–7–4–918.6. We agree with the trial court that the Institute's land use variance petition before the Council was not afforded the due process protections required by Article I, Section 23 of the Indiana Constitution.

### III. The Standard of Review to be Applied by the Trial Court On Writ of Certiorari

A decision of the legislative body under Indiana Code section 36–7–4–918.6 is subject to review via certiorari. Ind.Code § 36–7–4–1003(a) (1998). Each person aggrieved by a decision of the BZA, or legislative body, may present a verified petition setting forth that the decision is illegal in whole or in part and specifying the grounds of the illegality. *Id.*

When a trial court conducts a writ of certiorari of a BZA hearing (or by extension, the common council), it must determine that the decision was correct as a matter of law. *Bd. of Zoning Appeals v. Elkins,* 659 N.E.2d 681, 683 (Ind.Ct.App. 1996) (citing *Metro. Bd. of Zoning Appeals v. Gunn,* 477 N.E.2d 289, 294 (Ind.Ct.App. 1985)). The trial court may not conduct a trial de novo, and may not substitute its decision for that of the BZA absent a finding of illegality. *Elkins,* 659 N.E.2d at 683. An abuse of discretion standard is applied, and the trial court cannot reweigh the evidence or substitute its decision for that of the BZA (or common council). *Bd. of Zoning Appeals v. Kempf,* 656 N.E.2d 1201, 1203 (Ind.Ct.App.1995) (citing *Co-*

*lumbus Bd. of Zoning Appeals v. Wetherald,* 605 N.E.2d 208, 211 (Ind.Ct.App. 1992)).

In order to reverse the BZA's (or common council's) decision, the reviewing court must find, after resolving all doubts in favor of the BZA's decision, that each of the statutory requirements have been met "as a matter of law." *Kempf,* 656 N.E.2d at 1201. Generally, if there is sufficient evidence to support the BZA's decision, it must be upheld. *Elkins,* 659 N.E.2d at 683. On appeal, this court's review is restricted by the same standard. *Id.*

Indiana Code section 36–7–4–918.4 sets out five mandatory conditions that must be met before the common council may grant a use variance. *See id.* The statute requires that:

(1) The approval will not be injurious to the public health, safety, morals, and the general welfare of the community;

(2) The use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner;

(3) The need for the variance arises from some condition of the property involved;

(4) The strict application of the terms of the zoning ordinance will constitute an unnecessary hardship if applied to the property for which the use variance is sought; and,

(5) The approval does not interfere substantially with the comprehensive plan adopted under the 500 series of this chapter.

*Id.* In order for a petitioner to receive a land use variance, the petitioner must meet all of the above-cited statutory requirements. When applying the standard of review to the five mandatory prerequi-

sites listed in Indiana Code section 36–7–4–918.4, we afford great weight to the decision of the board (or common council) by virtue of its experience in this given area. *Kempf,* 656 N.E.2d at 1203; *see also McBride,* 579 N.E.2d at 1315.

The trial court's review of the record found that there was substantial evidence on all five of the statutory requirements, and thus, reversed the finding of the Council. Considering the great deference due to common council decisions in this regard, we must disagree with this finding of the trial court. However, because we believe that the Institute was not given notice and an opportunity to respond to all of the evidence presented against it and did not have the benefit of a fair and impartial hearing, we find that it would be improper to rely on the evidence presented to uphold the decision of the Council.

## IV. The Remedy

Under Indiana Code section 36–7–4–1009, a trial court may affirm, reverse, or modify a decision of the common council. *Id.* In the case at bar, the trial court reversed the decision of the Council because it found that substantial evidence had been presented for all five statutory requirements under Indiana Code section 36–7–4–918.4, and because the Council's use variance procedures violated the Institute's due process rights. *See* Appellants' App. p. 1197.

Upon reversal, the trial court noted that Indiana Code section 36–7–4–918.6(e) mandates that the HBZA finding and approval of the Institute's land use variance petition be substituted for the Council's denial of the petition. *See* Appellants' App. p. 1197. Indiana Code section 36–7–4–918.6(e) states:

(1) In a county described in subsection (a)(1), the legislative body shall vote on a petition within ninety (90) days

after the [BZA] makes its recommendation. If the legislative body does not vote to deny the petition within ninety (90) days, the petition is considered approved.

(2) In a county described in subsection (a)(2), the legislative body shall vote on a petition within sixty (60) days after the [BZA] makes its recommendations. If the legislative body does not vote to deny the petition within sixty (60) days, the petition is approved.

*Id.* Appellee contends that it follows, a fortiori, from Indiana Code section 36–7–4–918.6(e) and the reversal of the Council that the trial court must approve the findings of the HBZA. Br. of Appellee at 26–27. We disagree. The clear legislative purpose of Indiana Code section 36–7–4–918.6, whether constitutional or not, is to place the land use variance decision-making process squarely in the hands of the common councils of Lake and St. Joseph Counties. Reversing the Council and instituting the findings of the HBZA frustrates this purpose.[15] Thus, the trial court should not have approved the use variance petition solely on the basis of the HBZA findings.

We agree with the trial court that the Institute had a right to due process akin to that enjoyed by residents in ninety of Indiana's ninety-two counties and find that right to have been violated by the Council. But we disagree that there was sufficient evidence to vacate the Council's decision. We believe that the trial court was correct in reversing the decision of the Council; however, the proceedings should have been remanded to the Council for new proceedings consistent with the due process protections outlined in Indiana law and set forth in this opinion.

Reversed, and remanded to the trial court for proceedings consistent with this opinion.

RILEY, J., concurs.

BAKER, J., concurs in result with opinion.

BAKER, Judge, concurring in result.

I fully concur in the result reached by the majority and applaud the scholarship of the majority's opinion. However, I write separately because I believe that we should re-examine Indiana Code section 36–7–4–918.6 in light of our supreme court's recent decision in *Municipal City of South Bend v. Kimsey,* 781 N.E.2d 683 (Ind.2003).

The majority notes that no party challenged the constitutionality of Indiana Code section 36–7–4–918.6 and cites *Duncan v. Duncan,* 764 N.E.2d 763, 768–69 (Ind.Ct.App.2002), for the proposition that "we seem to be precluded from considering the constitutionality of a civil statute sua sponte." Op. at 250 n. 9. Neither our constitution nor court rule prohibits us from examining the constitutionality of a civil statute. Thus, the inclination to forgo sua sponte review of a civil statute is a self-imposed judicial restraint and not a requirement. The reason for this restraint is that all statutes are clothed with a presumption of constitutionality unless the statute's "unambiguous language" requires us to conclude otherwise. *Freidline v. Civil City of South Bend,* 733 N.E.2d 490, 493 (Ind.Ct.App.2000). Here, however, Indiana Code section 36–7–4–918.6 is facially unconstitutional inasmuch as it uses population figures in such a way as to

---

**15.** We would further note that because the Council did in fact vote on the zoning ordinance, Indiana Code section 36–7–4–918.6(e) plays no part in the analysis of the issue at hand.

make it applicable to only two of our ninety-two counties. *Kimsey,* 781 N.E.2d at 692. Additionally, inasmuch as our supreme court issued its opinion in *Kimsey* on January 15, 2003, after the parties in this case had submitted their briefs, we cannot fault the Institute for failing to challenge the statute's constitutionality.

I would note that the *Kimsey* court deemed Indiana Code section 36–4–3–13(g) to be special legislation and violative of Article IV, Section 23 of our constitution.[16] *Kimsey,* 781 N.E.2d at 694. The statute allowed St. Joseph County homeowners to defeat an annexation proposal if a simple majority of the affected landowners disapproved. *Id.* at 685. In the rest of the state, sixty-five percent of affected landowners were required to reject an annexation plan. *Id.* St. Joseph County was not singled out by name, but the population figures used in the statute made the statute applicable only to St. Joseph County. *Id.*

The *Kimsey* court held that "if there are characteristics of the locality that distinguish it for purposes of the legislation, and the legislation identifies the locality, it is special legislation. The identification of the locality may be by name ('Tippecanoe County'), by the characteristic that justifies special legislation (a unique Superfund liability), or otherwise (population parameters that include only the locality)." *Id.* at 692. The court found that Indiana Code section 36–4–3–13(g) was special legislation because "Section 36–4–3–13 now requires the opposition of sixty-five percent of landowners to defeat annexation in every other county in the State, but retains the majority requirement for St. Joseph County." *Id.* at 693.

The court went on to hold that legislation that was special could be considered constitutional if "accompanied by legislative findings as to the facts justifying the legislation's limited territorial application." *Id.* at 691. The *Kimsey* court cited *State v. Hoovler,* 668 N.E.2d 1229 (Ind.1996), as an example where "proponents of that special legislation had a factual basis upon which to rest their assertion that a general statute could not apply." *Id.* at 694. The legislation at issue in *Hoovler,* though only applicable to Tippecanoe County, was supported by a "well-documented" need to restore the only environmental Superfund site found in the state where local government was an identified Potentially Responsible Party. *Id.*

In *Kimsey,* the supporters of Indiana Code section 36–4–3–13(g) had argued that St. Joseph County had special needs: "the need to preserve rural land around urban areas" and the need "to prevent[ ] competing cities (South Bend and Mishawaka) within the same county from annexing each other's land." *Id.* at 694. However, our supreme court held that the need to preserve rural territory near a metropolitan area existed in Lake and Allen Counties as well. *Id.* The existence of multiple cities with annexation powers was also noted. *Id.* In sum, the *Kimsey* court held that "if the conditions the law addresses are found in at least a variety of places throughout the state, a general law can be made applicable and is required by Article IV." *Id.* at 692–93.

Here, an examination of the unambiguous language of Indiana Code section 36–7–4–918.6 reveals that we should *not* presume that the legislature acted within the constitutional constraints of Article IV,

**16.** Article IV, Section 23 of the Indiana Constitution reads as follows: "In all the cases enumerated in the preceding section, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State."

Section 23 because it uses the same type of population figures that triggered our supreme court's review in *Kimsey*. As the City of Hobart Common Council admits, the statute's population parameters make it applicable to only two of our ninety-two counties. Appellant's Br. p. 8. In ninety of our ninety-two counties, boards of zoning appeals have the final word on granting variances, but in Lake and St. Joseph Counties, legislative bodies are given the ultimate authority with respect to zoning decisions. Ind.Code § 36–7–4–918.6. When our supreme court has scrutinized a statute that uses population figures to make it applicable to only one county, we have no less reason to review a statute that uses population figures in such a way that it affects only two counties. Thus, I fail to see how Indiana Code section 36–7–4–918.6, like the statute at issue in *Kimsey*, is anything but special legislation.

Moreover, the statute itself provides no "legislative findings as to the facts justifying the legislation's limited territorial application." *Kimsey*, 781 N.E.2d at 691. The statute does not state why St. Joseph and Lake Counties are treated differently or what pressing problem drove the General Assembly to pass this statute.

In defense of the statute, amicus City of South Bend Common Council argues that in order to protect the public, "the Council must be permitted to review materials and hear evidence of witnesses which may be outside the official record of the Board of Zoning Appeals." Amicus Br. p. 4. The Council notes that the statute creates a public forum where property owners, neighborhood leaders, and other citizens may speak out for or against the zoning decision. Amicus Br. p. 6. Additionally, the Council's meetings are televised so a larger audience can be apprised of the zoning decisions. Amicus Br. p. 7.

Notwithstanding the Council's defense, it is apparent to me that its arguments could be applied to cities in our other ninety counties as well. No evidence of inherent characteristics of St. Joseph or Lake County was presented to show why their particular city councils—and not those in other counties—must obtain evidence outside the record of a board of zoning appeals. If more evidence and discussion truly lead to better decisions, as the Council seems to argue, the same could be said for *all* our counties. In short, "the conditions the law addresses are found in at least a variety of places throughout the state." *Kimsey*, 781 N.E.2d at 692–93. Thus, "a general law can be made applicable and is required by Article IV." *Id.*

Because Indiana Code section 36–7–4–918.6 is plainly special legislation, I would review its constitutionality and conclude that the statute is void as against Article IV, Section 23 of our constitution. *Id.* Thus, I would affirm and order that judgment be entered for the Institute.

Moreover, judicial economy compels this result. On remand, the trial court, now aware of our supreme court's decision in *Kimsey*, will be confronted with a motion to amend the Institute's petition for certiorari and will undoubtedly come to the same conclusion as I have.