STATE OF INDIANA, EX REL. MASON *v.* JACOBS ET AL.

[No. 24,594. Filed February 26, 1924.]

1. DRAINS.—*Authority to Establish.*—Authority to establish public drains is derived from the police power of the State to enact and enforce laws in the interest of the public welfare and for the general public benefit. p. 330.

2. DRAINS.—*Establishment of.*—*Delegation of Authority.*—The establishment of public drains is an exercise of the sovereign power of the State, and may be delegated to local authorities, or to such other bodies, companies or corporations as the legislature may choose to recognize and thus endow. p. 330.

3. STATUTES.—*Construction.*—When the meaning of a statute is plain and unambiguous, there is no room for judicial con-

struction, but when the contrary condition exists, judicial interpretation may be properly demanded.   p. 330.

4.   STATUTES.— Construction.— The statutory rule (§240 Burns 1914, §240 R. S. 1881) requiring that words and phrases in statutes be taken in their ordinary and usual sense is merely declaratory in part of the common law on that subject, but it does not preclude the operation of other common-law rules of equal dignity and importance in giving effect to the legislative intent.   p. 331.

5.   DAMAGES.—"Damaged" and "Damages" Defined.—"Damaged", in the ordinary and usual sense of the term, signifies an injury done, and "damages" the estimated money equivalent for such injury.   p. 331.

6.   DRAINS. — Contractor's   Bond. — Liability. — Statute. — The statute (§6144 Burns 1914) providing for a bond by the contractor for the construction of a drain, and creating a liability thereon to any person who shall be "damaged" by reason of the failure of the contractor to complete the work within the time limited, and providing that the full amount of such "damages" may be recovered in an action on the contractor's bond, on the relation of the person "damaged" means that landowners whose lands or the crops thereon have been damaged as a direct result of the failure of the contractor to complete the work of construction within the time limited may sue on such bond, and not those whose lands have been damaged on account of delayed anticipated benefits from the drainage.   p. 333.

From Daviess Circuit Court; James W. Ogden, Judge.

Action by Taylor Mason, on the relation of the State of Indiana, against Thomas Jacobs and others.   From a judgment for defendants, the plaintiff appeals. (Transferred from Appellate Court under §1394, cl. 2, Burns 1914.)   Affirmed.

W. A. Cullop and Alvin Padgett, for appellant.
Charles E. Henderson, for appellees.

MYERS, J.—Appellant, the relator, brought this action against appellees to recover damages on account of an alleged breach of a certain bond given by appellee Jacobs as principal and his coappellee as surety for the faithful performance by Jacobs of a certain contract for

the construction of a public drain established by the Knox Circuit Court under the provisions of chapter 252, Acts 1907 p. 508, §6140 et seq., Burns 1914. The surety's demurrer to the complaint for want of facts was sustained, and this ruling of the court is assigned as error.

From the complaint it appears that the contract and bond were executed March 21, 1916. The contract was between Jacob S. Spiker, superintendent of construction, and appellee Thomas Jacobs, and it was therein stipulated that the latter shall complete the work of drainage in accordance with the plans and specifications therefor on or before December 1, 1916. The bond, after identifying the drainage proceeding and the fact of letting the contract to Jacobs, continued as follows: "Now, therefore, if said contractor shall well and faithfully do and perform said work in all respects, * * * and according to the time, terms, provisions and conditions specified in the said contract for said work * * * and shall pay all damages to any person, firm or corporation, which shall suffer loss or damage by reason of any failure or neglect of said contractor to properly perform such work or carry out his contract in any particular, then this obligation shall be void; otherwise to be and remain in full force and effect." The work was not completed within the time fixed by the contract, and, by reason of such breach only, that part of relator's land—about forty acres— drained by the proposed ditch, and for which he paid an assessment of $267.60, could not be cultivated in corn for the years 1917 and 1918 as relator intended to do and would have done had the ditch been completed according to contract; that the rental value of the land without the drainage as provided in the contract was $100 per year, and with the drainage constructed as per contract, its rental value would have been $5,000

for the year 1917 and $3,000 for the year 1918, whereby relator was damaged in the sum of $8,000.

Appellant points to §5 of Act 1907 p. 508, §6144 Burns 1914, as authority for the execution of the contract and bond, and his right to maintain this action. The provision of this statute on which appellant relies provides: "And in case any person or party whose lands are assessed for the construction of such ditch shall be damaged by reason of such default and failure of such contractor to complete the work within the time limited, such contractor * * * shall be liable on his bond to the person or party so damaged to the full amount of such damages, which may be recovered in any court of competent jurisdiction in a suit or an action on such bond by the State of Indiana on the relation of the person or party damaged for the use of such person or party injured or damaged, and the amount recovered shall be paid to the party injured."

It must be conceded that the present controversy grew out of a public and not a private enterprise. The authority for the establishment of public drainage in this state rests upon the reserved power of the state to enact and enforce laws in the interest of public welfare and for the general public benefit. Such legislative action is the exercise of sovereign power which may be delegated to local authorities, or to such other bodies, companies or corporations as the legislature may choose to recognize and thus endow. *Bemis* v. *Guirl Drainage Co.* (1914), 182 Ind. 36.

The contract and bond at bar is in accordance with the legislative prescribed machinery for the successful execution of the particular drainage undertaking, but appellant was not a party to either the contract or bond. These instruments were public in character and appellant's interests are purely pri-

vate. However, he claims that the failure of the contractor to complete the ditch within the time stated in the contract was a breach of the bond which, by statute, was made to cover damage on account of delayed benefits from the drainage. He cannot and does not rely upon any principle of the common law to sustain his contention, but grounds his right solely on the authority of the statutory provision quoted from §5, Acts 1907 p. 508, *supra*. Hence, the question presented is: Did the legislature thereby intend to create a new right or liability unknown to the common law, or did it intend to provide a remedy additional to that already existing? In *Grams* v. *Murphy* (1908), 103 Minn. 219, 222, 114 N. W. 753, 755, the question was stated thus: "In this case the question is, not whether a land owner may be inconvenienced and deprived of certain profits if there is delay in draining his land, but whether it was the intention of the law makers to provide this statutory bond for the purpose of compensating him."

We quite agree with appellant that when the meaning of a statute is plain and unambiguous, there is no room for judicial construction, but, on the other hand, when the contrary certainly appears, judicial interpretation may be properly demanded. *Fesler, Auditor,* v. *Bosson* (1920), 189 Ind. 484, 492; *Ward* v. *State* (1919), 188 Ind. 606.

There are numerous well-defined and well-recognized rules for construing statutes, but none of them is more frequently applied by the courts than the following: "Words and phrases shall be taken in their plain, or ordinary and usual sense. But technical words and phrases, having a peculiar and appropriate meaning in the law, shall be understood according to their technical import." §240 Burns 1914, §240 R. S. 1881. This statutory rule of construction is merely declaratory in part of the common law on that

subject.   But it does not preclude the operation of other common-law rules of equal dignity and importance in giving effect to the legislative intent.   2 Lewis, Sutherland Statutory Construction (2d ed.) §396.

The provision of the statute to which we have referred uses the word "damaged" four times and the word "injured" twice, the last five of which, considering the word "injured" interchangeably with "damaged", all relate, no other intention appearing, to the same subject-matter and look to the same general purpose, and must be considered in the sense first employed, namely, damage to property.   *Ryan* v. *State* (1910), 174 Ind. 468, 474, (and cases there cited) Ann. Cas. 1912D 1341.   This statutory provision also uses the word "damages" in the sense of compensating the party damaged.   These words, "damaged" and "damages", together have a well-established common-law meaning, and we may say, when they are measured by the "ordinary and usual sense" rule, their true import is just as apparent.   The public generally, in speaking of a thing damaged, understands perfectly that such reference signifies an injury done, and by "damages" the estimated money equivalent for the injury sustained.   Such are the definitions usually attributed to these words by lexicographers.   Bouvier's Law Dictionary; Anderson's Law Dictionary; Century Dictionary; Webster and Standard Dictionaries.

In this case there is no claim of any damage or injury whatever to appellant's land, nor is recovery sought on the theory of common-law negligence, nor for a damage not common to all persons whose lands were assessed.   It is needless to say, except by way of reminder, that such drainage contractor would be liable to any landowner, whether his land was assessed or not, for any damage or injury done, proximately caused by negligent acts of omission or commission in the

prosecution of the work. But, in such case, there would be no liability on the bond. For aught appearing in the case at bar, the contractor never did anything in the way of work on the ditch under his contract. If that be true, the statute, §6144 Burns 1914, *supra,* gave the construction commissioner a remedy, which, under certain contingencies, extended to the contractor's bond. But any action the commissioner might take would have no bearing upon the direct individual right of the appellant. However, in either case, the only authority to pursue the bond is statutory.

Considering the drainage statute as a whole, and especially the provision relied on by appellant, we are satisfied that the legislature did not thereby intend

6.  to create a new cause of action, and that the words "damaged" and "damages" were used in their common-law sense; but, on the other hand, the language of the statute warrants the conclusion that a landowner whose land has been assessed is given recourse to the contractor's bond as an additional remedy for the collection of his damages only in case of an injury to the land itself or to growing crops or grasses, or by lessening its then productiveness, or for a reduction of its then rental value, brought about by the failure of the contractor to complete the work within the time limited. "The general purpose and scope of the act is to secure drainage for the public good, and not to compensate such owners because of delay in carrying out the project." The more reasonable and natural meaning of that part of the statute is that the bond is intended to indemnify only a particular class of landowners who may be damaged as a direct result of the work of construction. *Grams* v. *Murphy, supra,* p. 224.

For the reasons stated, we are led to conclude that the bond at bar does not provide compensation for loss

of delayed anticipated benefits by reason of the contractor's failure to complete the ditch on time.

Judgment affirmed.