**DEARBORN FABRICATING AND ENGINEERING CORP., INC.,**
Appellant (Defendant Below),

v.

**William D. WICKHAM, Pamela Wickham, Le Ann Wickham, and Jennifer Wickham, Appellees (Plaintiffs Below).**

No. 71S03–9003–CV–228.

Supreme Court of Indiana.

March 27, 1990.

R. Kent Rowe, Jerry E. Huelat, Martin J. Gardner, Rowe, Foley & Huelat, South Bend, for appellant.

Douglas A. Mulvaney, Stutsman Law Office, Elkhart, for appellees.

DICKSON, Justice.

This case presents a question of first impression in Indiana: whether a minor child has an independent claim for loss of parental consortium when a parent is negligently injured by a third person. The trial court and the Court of Appeals held that minor children may assert such a claim. *Dearborn Fabricating and Eng'g Corp. v. Wickham* (1988), Ind.App., 532 N.E.2d 16.

William D. Wickham; his wife, Pamela; and their two children, Le Ann and Jennifer, filed a complaint against Dearborn Fabricating and Engineering Corp. seeking damages for personal injuries William sustained when he fell through a hole in a catwalk. Count VII alleged a cause of action on behalf of Le Ann and Jennifer for the loss of the support, services, society and companionship of their father. · Dearborn filed a motion to dismiss Count VII for failure to state a claim for relief. The trial court granted the motion in part by striking the word "support" (which the Wickhams do not challenge) and denied the motion as to the balance of the allegations. *Id.*

Writing for the Third District Court of Appeals, Judge Staton, with Judges Garrard and Miller concurring, noted that seven states since 1980 have recognized the action, but that thirty-three jurisdictions still refuse to do so.[1] *Id. See also* Annotation, *Child's Right of Action for Loss of Support, Training, Parental Attention, or the Like, Against a Third Person Negligently Injuring Parent*, 11 A.L.R.4th 549 (1982). After identifying five arguments advanced by those courts declining to recognize the cause of action, the Court of Appeals opinion succinctly evaluated each argument with sound reasoning and con-

cluded that Indiana should recognize a minor's cause of action for loss of consortium when the parent is negligently injured by a third party. Since its decision in *Dearborn*, the Third District Court of Appeals, comprised of a panel of judges different from those in *Dearborn*, decided *Barton–Malow Co., Inc. v. Wilburn* (1989), Ind. App., 547 N.E.2d 1123, in which Judges Hoffman and Shields (Staton, J., dissenting on this issue) declined to follow *Dearborn*, preferring to leave the issue for legislative resolution. To the contrary, we find the question of whether the common law should recognize a child's action for loss of parental consortium to be entirely appropriate for judicial determination. We grant transfer to review this new question of law.

One of the strongest arguments favoring the recognition of damages for loss of parental consortium is its similarity to damages customarily allowed for others with analogous claims. In the converse of the present facts, injuries to a child will entitle a parent to seek damages for loss of the child's services, society, and companionship. *School City of Gary v. Claudio* (1980), Ind.App., 413 N.E.2d 628. Similarly, an injured person's spouse may bring an action for loss of consortium. *Troue v. Marker* (1969), 253 Ind. 284, 252 N.E.2d 800 (wife's claim); *Burk v. Anderson* (1952) 232 Ind. 77, 109 N.E.2d 407 (husband's claim). Absent overriding considerations, relationship losses suffered by a child of an injured person should receive comparable treatment.

The appellant-defendant Dearborn argues that one such consideration is the childbearing and sexual relations aspect of the spousal relationship not present in that of parent and child. The "predominant element" in the concept of consortium has been described as the loss of the sexual relationship. *See Salin v. Kloempken* (1982), Minn., 322 N.W.2d 736, 738 (quoting *Thill v. Modern Erecting Co.* (1969), 284

---

1. Since the Court of Appeals decision, an additional jurisdiction recognized the cause of action, *Villareal v. State, Dept. of Transportation* (1989), 160 Ariz. 474, 774 P.2d 213, and two

others declined to do so. *Gaver v. Harrant* (1989), 316 Md. 17, 557 A.2d 210; *Vaughn v. Clarkson* (1989), 324 N.C. 108, 376 S.E.2d 236.

Minn. 508, 510–11, 170 N.W.2d 865, 867–68).

> There are significant differences between the marital relationship and the parent-child relationship that support the limitation of a cause of action for loss of consortium to the marital relationship. As we stated above, the spousal action rests in large part on the deprivation of sexual relations and the accompanying loss of childbearing opportunity, which does not exist as an element of damages in the child's action.

*Salin*, 322 N.W.2d at 739. However, we view such deprivation as but one component of a spouse's consortium action. "The other elements—love, companionship, affection, society, comfort, services and solace—are similar in both relationships and in each are deserving of protection." *Berger v. Weber* (1981), 411 Mich. 1, 14, 303 N.W.2d 424, 426.

Another difference often discussed is that actions by children for loss of parental consortium create problems of multiplication of actions and damages not present in the spousal context.

> If the claim were allowed there would be a substantial accretion of liability against the tortfeasor arising out of a single transaction (typically the negligent operation of an automobile). Whereas the assertion of a spouse's demand for loss of consortium involves the joining of only a single companion claim in the action with that of the injured person, the right here debated would entail adding as many companion claims as the injured parent had minor children, each such claim entitled to separate appraisal and award. The defendant's burden would be further enlarged if the claims were founded upon injuries to both parents. Magnification of damage awards to a single family derived from a single accident might well become a serious problem to a particular defendant as well as in terms of the total cost of such enhanced awards to the insured community as a whole.

*Borer v. American Airlines, Inc.* (1977), 19 Cal.3d 441, 449, 563 P.2d 858, 863, 138 Cal.Rptr. 302, 307 (quoting *Russell v. Salem Transportation Co.* (1972), 61 N.J. 502, 506, 295 A.2d 862, 864).

The Supreme Court of Michigan responded to such an argument by noting that "[m]ultiplicity of actions arising out of the same tortious act are a present reality in tort law. Multiple actions may result whenever a single tortious act injures more than one person or property owned by more than one person." *Berger*, 411 Mich. at 14, 303 N.W.2d at 426. Although our Court of Appeals found that "concern for multiple claims and protracted litigation can be minimized by requiring joinder of the minor's consortium claim with the injured parent's claim unless it is not feasible in a particular case[,]" 532 N.E.2d at 17, it did not discuss the effect of Ind.Code § 34–1–2–5, which tolls the statute of limitations during minority. As noted by the Supreme Court of Minnesota, such a tolling statute "establishes a roadblock to joinder in parental consortium cases that could be removed only by enactment of legislation creating a uniform limitations period for both the parent's action for personal injuries and the child's action for loss of parental consortium." *Salin*, 322 N.W.2d at 740.

More significant to us than this possible roadblock to consolidation created by the minors' statute of limitations, is the potential harm to the family which may be generated in children's actions for loss of consortium. We are particularly concerned that each claim for such damages will invite defendants to minimize the claim by seeking to prove inadequacy and weakness of a child's familial relationships, resulting in pretrial investigation, depositions, trial testimony, and final argument attacking the quality of parent-child relationship enjoyed by the child before the parent's injuries. Many loving children heretofore content would thus be likely to suffer significant emotional harm inflicted by the litigation process itself, in addition to that already resulting from the parent's injuries.

While the parent-child relationship may presently be attacked in the litigation of a parent's claim for loss of services, society, and companionship resulting from tortious

injuries to a child, we perceive such efforts as directed more at the adult parent claiming the loss, with negligible potential for personal attack upon a child's values and perceptions. Furthermore, an adult pursuing a claim for loss of society and companionship or spousal consortium takes on the risk of litigation assault upon the familial relationship knowingly and voluntarily. But this is not so for a child. The parent's attorney will likely include the child's claim with that of the parent as a matter of course.

It is this consideration which persuades us that a child's loss of consortium claim may be distinguished and treated differently from that of a parent or a spouse.

However, we acknowledge that this distinction has not been applied to preclude a child's damage claims in actions for the wrongful death of a parent. In actions brought under Ind.Code § 34–1–1–2, recovery is allowed for loss of care, love and affection sustained by a decedent's spouse and the loss of parental care, training and guidance sustained by a decedent's children during their minority. *See Andis v. Hawkins* (1986), Ind.App., 489 N.E.2d 78, 82. The Supreme Court of Arizona noted:

> [O]ften death is separated from severe injury by mere fortuity. [citation omitted] Both may cause a deleterious impact on the quality of consortium. It would be inconsistent to allow recovery for loss of consortium resulting from death but to deny recovery when the loss results from severe injury.

*Villareal v. State, Dept. of Transportation* (1989), 160 Ariz. 474, 479, 774 P.2d 213, 218.

Other courts have recognized "two significant distinctions between the child whose parent is killed and one whose parent is disabled, both of which flow from the fact that in the latter case the living victim retains his or her own cause of action." *Borer,* 19 Cal.3d at 452, 563 P.2d at 865, 138 Cal.Rptr. at 309. The first distinction relates to the historical purpose of wrongful death statutes. At common law, the heirs of a deceased victim could not bring a cause of action against the tortfeasor.

This loophole in the law curtailed the deterrent function of tort recovery, providing to tortfeasors a substantial incentive to finish off their victims. The wrongful death statutes thus met an obvious logical and social need.

Similar policy reasons led the courts to permit the bereaved to recover for the loss of the affection and society of the deceased.... Recovery for loss of affection and society in a wrongful death action thus fulfills a deeply felt social belief that a tortfeasor who negligently kills someone should not escape liability completely, no matter how unproductive his victim.

*Id.* at 452, 563 P.2d at 865, 138 Cal.Rptr. at 309. Where the parent is injured but not killed, the tortfeasor cannot "escape with impunity," because the immediate victim retains a cause of action for his injuries; the child's claim is not essential to prevent the tortfeasor from totally escaping liability. *Id.* at 452, 563 P.2d at 866, 138 Cal. Rptr. at 310.

The second distinction is that the wrongful death action serves as the only means by which the family unit can recover compensation for the loss of parental care and services when a parent is tortiously killed. "While the parent lives, however, 'the tangible aspects of the child's loss can be compensated in the parent's *own* cause of action.[']" [emphasis in original] *Id.* at 452, 563 P.2d at 866, 138 Cal.Rptr. at 310 (quoting *Suter v. Leonard* (1975), 45 Cal. App.3d 744, 748, 120 Cal.Rptr. 110, 112). But where the parent dies, compensation for loss of parental care and services can be recovered only through a wrongful death action. Whether or not this compensation encompasses recovery for the child's loss of society and companionship in addition to more pecuniary items such as lost wages from which support would have been furnished, the availability of some reparation for disadvantage to the child and to the victim's family furnishes a sufficient basis for allowing the child to recover for lost society and companionship in the case of a parent's death but not in the case of parental injury.

*Berger*, 411 Mich. at 48, 303 N.W.2d at 441–42 (Levin, J., dissenting).

Furthermore, we perceive a distinguishing difference between the relationship harm which could result from the litigation of a child's claim for the wrongful death of a parent and that from a child's loss of consortium claim when the parent is not fatally injured. In the latter event, the parent-child relationship continues and may well be negatively affected by litigation damage, perhaps resulting in enhanced emotional harm. In the former, the relationship is but a memory and not generally subject to consequential alteration. In addition, common decency would likely dampen any inclination to attack the quality of the relationship enjoyed by a surviving child with his late parent.

It is therefore our conclusion that, apart from wrongful death actions, a child may not maintain an action for loss of parental consortium when the parent is negligently injured by a third person.[2] We therefore vacate the opinion of the Court of Appeals, reverse the trial court's denial of the defendant's motion to dismiss Count VII, and remand this case to the trial court for further proceedings not inconsistent with this opinion.

SHEPARD, C.J., and DeBRULER and GIVAN, JJ., concur.

PIVARNIK, J., not participating.

---

2. This holding applies only to a child's action for loss of parental consortium. It does not preclude recovery for psychological or medical expenses, or other special damages, incurred by or on behalf of a child which proximately results from tortious injuries to a parent.