**PERRY–WORTH CONCERNED CITIZENS, Everett Smith, Betty Smith, Daniel Tyler, Mary Tyler, Philip Gibbs, Cynthia Gibbs, Bruce Thompson, Sue Thompson, Oscar England, and Lamonia England, Appellants–Plaintiffs,**

v.

**BOARD OF COMMISSIONERS OF BOONE COUNTY, Valenti–Held Real Estate Group, LLP, and Brenwick Development Company, Inc., Appellees–Defendants.**

No. 41A01–9903–CV–70.

Court of Appeals of Indiana.

Feb. 2, 2000.

Transfer Denied April 25, 2000.

**458**

Frank C. Capozza, Indianapolis, Indiana, Thomas A. Whitsit, Janine M. Steck, Giddings Whitsit & McClure, Lebanon, Indiana, Attorneys for Appellants.

Steven A. Holt, Holt Fleck & Free, Noblesville, Indiana, Jan M. Carroll, Barnes & Thornburg, Indianapolis, Indiana, Attorneys for Appellees.

## OPINION

KIRSCH, Judge

Appellants appeal a negative judgment in the trial court on their challenge to an ordinance rezoning a parcel of real property in Boone County, raising several issues for review. We address only one, which we find dispositive: whether Garland Ferrell, a member of the Boone County Board of Commissioners, should have disqualified himself from voting on the ordinance because of a conflict of interest arising from his spouse's ownership interest in nearby property.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On December 12, 1997, Valenti–Held Real Estate Group, LLP, and Brenwick Development Company, Inc. (collectively "Brenwick") filed an application for rezoning for parcels of real estate comprising about 800 acres in Boone County (Brenwick property), which it later amended. The amended application requested a zoning change to allow the construction of a mixed use development on the Brenwick property. To support its development, Brenwick agreed to bear the cost of having water and sewer lines installed to provide utility service to the property. To reach the Brenwick property, the utility lines would run through land not currently receiving water and sewer utility service.

After a public hearing on April 8, 1998, the Boone County Area Plan Commission sent the proposal to the Boone County Board of Commissioners (Board) with no recommendation.

On June 8, 1998, Commissioner Garland Ferrell filed a conflict of interest disclosure statement with the Boone County Auditor's Office, the State Board of Accounts, and the State Ethics Committee. This disclosure statement revealed that Ferrell's wife owned a one-fifth interest in land (the Cooney farm) near the Brenwick property and included a legal description of the Cooney farm.

On June 10, 1998, the Board held a public hearing to consider the proposal. At the beginning of the hearing, Ferrell made a public statement disclosing his wife's interest in nearby property. The Board heard testimony from those in favor and those opposed to the rezoning. An audience member asked Ferrell if he intended to vote, and he replied that he did. After some discussion, the Board approved the rezoning ordinance by a vote of two in favor to one opposed. Ferrell voted in favor of the ordinance.

Appellants filed suit challenging the adoption of the ordinance. The trial court issued extensive findings of fact and conclusions thereon, ruling that the ordinance was validly adopted. In addition, the trial court determined that Appellants lacked

standing to challenge the ordinance in court. Appellants now appeal.

## DISCUSSION AND DECISION

Appellants contend that Ferrell had a conflict of interest that required him to disqualify himself from considering and voting on the ordinance. The General Assembly has enacted a specific provision about conflicts of interest specific to zoning issues. The statute provides:

> "A member of a . . . legislative body may not participate as a member of the . . . legislative body in a hearing or decision of that . . . body concerning a zoning matter in which the member has a direct or indirect financial interest."

IC 36–7–4–223(b).

■ The parties agree that the interpretation of this statute is the crucial question. A question of statutory interpretation is a matter of law to be determined by this court. *Miller v. Walker,* 642 N.E.2d 1000, 1001 (Ind.Ct.App.1994), *aff'd* 655 N.E.2d 47 (Ind.1995) (citing *Joseph v. Lake Ridge Sch. Corp.,* 580 N.E.2d 316, 319 (Ind.Ct.App.1991), *trans. denied* ). We are not bound by a trial court's legal interpretation of a statute and need not give it deference. *Id.* We independently determine the statute's meaning and apply it to the facts before us. *Id.*

■ The court's goal in statutory construction is to determine and give effect to statutory intent. *Rush v. Elkhart County Plan Comm'n,* 698 N.E.2d 1211, 1215 (Ind. Ct.App.1998) (quoting *Consolidation Coal Co. v. Indiana Dep't of State Rev.,* 583 N.E.2d 1199, 1201 (Ind.1991), *trans. denied* ). Where the General Assembly has defined a word, this court is bound by that definition, even though it conflicts with the common meaning of the word. *Id.* However, where the General Assembly has used a word without definition, this court must examine the statute as a whole and attribute the common and ordinary meaning to the undefined word, unless doing so would deprive the statute of its purpose or effect.

*Id.* Further, a court may not read into a statute that which is not the expressed intent of the legislature. *Id.*

■ Appellants argue that the crucial question is the interpretation of the statutory terms "direct" and "indirect." We disagree. Instead, we focus on the term "zoning matter." The trial court determined that the zoning matter before the Board was Brenwick's petition to rezone its 800 acre property. We agree. Here, Ferrell is not statutorily disqualified because he had no interest—direct or indirect—in the zoning matter. The zoning matter was the rezoning of the Brenwick property, in which Ferrell owns no interest. The term "zoning matter" in the statute does not include property in the vicinity of property being rezoned. Had the General Assembly intended to disqualify legislators who own land near subject properties, it could have stated so. As it did not, there is no basis for interpreting the plain words of the statute to include such situations.

Appellants argue that the term "conflict of interest" should be construed more broadly. They contend that any interest that would undermine public confidence in the zoning process should be considered a disqualifying conflict of interest. In support of this claim, they cite *Fail v. LaPorte County Bd. of Zoning Appeals,* 171 Ind. App. 192, 355 N.E.2d 455 (1976). In that case, neighboring landowners challenged the board of zoning appeals' decision to grant a variance and special exception to the petitioner. On appeal to the trial court, the landowners argued that one of the board members had a conflict of interest that should have disqualified him from taking part in the consideration of the matter. At that time, the statute prohibited a board of zoning appeals member from participating in any matter "in which he is directly or indirectly interested in a financial sense." *Id.* at 195, 355 N.E.2d at 457. The landowners presented evidence that the board member owned a retail equipment dealership which had sold a number

of pieces of equipment to the petitioner in the five years prior to the decision and immediately afterwards. The landowners claimed that this created a statutory conflict of interest. *Id.*

The court agreed with the landowners that they need not show that the prohibited interest actually affected the member's vote, and stated that a court may find a conflict of interest upon consideration of whether the situation is one reasonably calculated to weaken public confidence and undermine the public's sense of security for the protection of individual rights in the exercise of zoning authority. *Id.* at 196, 355 N.E.2d at 458. It noted, however, that the existence of a prohibited conflict of interest is a question of fact. In this case, the court of appeals held that there was no error in the trial court's determination that no such conflict existed because the evidence did not support a conclusion contrary to that reached by the trial court. *Id.*

 Although *Fail* involved the same statute at issue here, the case arose from an administrative, or quasi-judicial, determination. Due process requires a neutral, unbiased decision maker in such situations. *Rynerson v. City of Franklin,* 669 N.E.2d 964, 967 (Ind.1996) (quoting KENNETH C. DAVIS & RICHARD J. PIERCE, JR., ADMINISTRATIVE LAW TREATISE § 9.8 (1994)). As our supreme court explained, "it [is] 'imperative that a strict test of impartiality be applied to the factfinding process.'" *Id.* (quoting *City of Mishawaka v. Stewart,* 261 Ind. 670, 677–78, 310 N.E.2d 65, 69 (1974)). By contrast, in this case, Appellants challenge a legislative, not an administrative determination based on fact-finding. In the legislative arena, there is no constitutional due process requirement of neutral decision makers. Instead, the check on the process is the ballot box.

A conflict of interest case with a more similar procedural posture is *Stokes v. City of Mishawaka,* 441 N.E.2d 24 (Ind.Ct. App.1982). In *Stokes,* the homeowners argued that the city council's zoning action

was invalid because one member of the council had a disqualifying conflict of interest. At issue was the fact that the petitioner for rezoning was represented by a council member's son. The homeowners did not invoke the statute under consideration here, but argued that the council member should have been precluded from voting on the matter because voting under the circumstances "violates the doctrine of 'appearance of fairness.'" *Id.* at 28. In addressing this argument, the court distinguished cases involving zoning authority members who had potential conflicts of interest while acting in a quasi-judicial capacity. In this case, the council was acting in a legislative capacity and "as such is responsible to the electorate." *Id.*

Likewise, here, the Boone County Commissioners were acting in their legislative capacity in enacting the rezoning ordinance. As such, the "appearance of impropriety" standard is inappropriate here. The General Assembly has not adopted such a standard, and we will not read one into this statute. Rather, we give plain meaning to the words of the statute and conclude that Ferrell had no disqualifying conflict of interest in this case.

Affirmed.

SHARPNACK, C.J., and RILEY, J., concur.