Timothy R. CHAMBERLAIN, M.D., Timothy R. Chamberlain, M.D., P.C., C. Bryan Wait, M.D., Alfred F. Allina, D.O., Carl S. Wrobleski, M.D., Christopher Zee–Cheng, M.D., Gary Hambel, M.D., Whitley Memorial Hospital, Inc., a/k/a Whitley County Memorial Hospital, Inc., and Lutheran Hospital of Indiana a/k/a Lutheran Hospital of Indiana, Inc., Appellants–Defendants,

v.

Richard Steven WALPOLE, Appellee–Plaintiff.

No. 02A04–0302–CV–92.

Court of Appeals of Indiana.

Oct. 6, 2003.

Rehearing Denied Dec. 12, 2003.

Phillip W. Ogden, Timothy A. Ogden, Ogden & Ogden LLP, Warsaw, IN, Attorneys for Appellee.

## OPINION

BROOK, Chief Judge.

### Case Summary

Appellants-defendants Timothy R. Chamberlain, M.D., Timothy R. Chamberlain, M.D., P.C., C. Bryan Wait, M.D., Alfred F. Allina, D.O., Carl S. Wrobleski, M.D., Christopher Zee–Cheng, M.D., Gary Hambel, M.D., Whitley Memorial Hospital, Inc., a/k/a Whitley County Memorial Hospital, Inc., and Lutheran Hospital of Indiana a/k/a Lutheran Hospital of Indiana, Inc. (collectively, "Appellants") appeal from the denial of their motion for preliminary determination. We affirm.

### Issue

Appellants raise two issues on appeal, which we consolidate and restate as whether the Indiana Wrongful Death Act [1] limits recovery under the Indiana Medical Malpractice Act.[2]

### Facts and Procedural History

On September 30, 1998, Richard Steven Walpole's father died while under the care of Appellants. On May 1, 2000, Walpole filed his first amended proposed medical malpractice complaint with the Indiana Department of Insurance,[3] alleging that he had "incurred funeral and burial expenses and [had] lost the love, care, affection, society, companionship, and services of his father and has experienced extreme mental anguish" due to Appellants' negligence. Appellants' App. at 4. On January 9, 2002, Wrobleski, Zee–Chang, and Hambel filed a

Calvert S. Miller, Diana S. Bauer, Miller, Carson, Boxberger & Murphy LLP, Fort Wayne, IN, Attorneys for Appellants Carl S. Wrobleski, M.D., Christopher Zee–Cheng, M.D., and Gary Hambel, M.D.

Robert F. Parker, Burke, Costanza & Cuppy LLP, Merrillville, IN, Attorney for Appellants Timothy Chamberlain, M.D., and Timothy Chamberlain, M.D., P.C.

N. Jean Schendel, Hunt Suedhoff Kalamaros LLP, Fort Wayne, IN, Attorney for Appellants C. Bryan Wait, M.D., and Whitley Memorial Hospital, Inc.

Mary R. Feldhake, Locke Reynolds LLP, Indianapolis, IN, Attorney for Appellant Alfred F. Allina, D.O.

1. Ind.Code §§ 34–23–1–1 to 34–23–1–2.

2. Ind.Code §§ 34–18–1–1 to 34–18–18–2.

3. *See Shelton v. Wick,* 715 N.E.2d 890, 894 (Ind.Ct.App.1999) ("The [Medical Malpractice] Act provides that submission of a proposed complaint to the Department of Insurance and presentation to a medical review panel is a condition precedent to filing a medical malpractice claim in a court in Indiana."), *trans. denied* (2000).

motion for preliminary determination under the Medical Malpractice Act[4] seeking an order precluding Walpole from recovering for the loss of his father's love, care, and affection under the Wrongful Death Act. The remaining appellants later joined in the motion. On December 16, 2002, the trial court denied Appellants' motion. Appellants now appeal.

### Discussion and Decision

Appellants contend that Walpole may not seek damages for the loss of his father's love, care, affection, society, companionship, and services under the Medical Malpractice Act because he would not be able to recover them under the Wrongful Death Act.[5] Appellees counter that the damages provisions of the Wrongful Death Act do not apply to the Medical Malpractice Act.

■■■ All parties agree that this appeal turns on statutory interpretation. "A question of statutory interpretation is a matter of law to be determined by this court." *Perry–Worth Concerned Citizens v. Bd. of Comm'rs of Boone County,* 723 N.E.2d 457, 459 (Ind.Ct.App.2000), *trans. denied.* Although Appellants do not specifically mention the concept, they essentially contend that the Wrongful Death Act is *in pari materia* with the Medical Malpractice Act and that the damages provisions of the former must be applied to the

latter.[6] "Statutes relating to the same general subject matter are *in pari materia* and should be construed consistently and harmoniously, rather than in a manner that renders them conflicting." *Estate of Cummings by Heck v. PPG Indus., Inc.,* 651 N.E.2d 305, 309 (Ind.Ct.App.1995), *trans. denied* (1996).

■■ We note, however, that "the rule of construction requiring statutes *in pari materia* to be construed together is only to be applied as an aid in determining the meaning of a doubtful statute; it cannot be invoked where the language of the statute is plain and unambiguous." *Comm. Hosp. of Anderson and Madison County v. McKnight,* 493 N.E.2d 775, 777 (Ind.1986). We must determine, then, whether the Medical Malpractice Act is ambiguous as to the damages recoverable thereunder.

Indiana Code Section 34–18–8–1 provides in part that "a patient or the representative of a patient who has a claim under this article for bodily injury or death on account of malpractice may ... [f]ile a complaint in any court of law having requisite jurisdiction." Indiana Code Section 34–18–2–22 defines "patient" as

an individual who receives or should have received health care from a health care provider, under a contract, express or implied, and includes a person having a claim of any kind, whether derivative

---

4. *See* Ind.Code § 34–18–11–1 (allowing trial court to preliminarily determine issue of law in medical malpractice action).

5. Appellants concede that Walpole may seek to recover reasonable hospital, medical, funeral, burial, and estate administration expenses. *See* Ind.Code § 34–23–1–1 ("[W]hen [the] decedent leaves no ... widow, widower, or dependent children, or dependent next of kin, surviving him or her, the measure of damages to be recovered shall be the total of the necessary and reasonable value of such hospitalization or hospital service, medical and surgical services, such funeral expenses,

and such costs and expenses of administration [of his or her estate], including attorney fees.").

6. Appellants do not explain why *only* the damages provisions of the Wrongful Death Act should apply to the Medical Malpractice Act. Indeed, if we were to construe the Medical Malpractice Act and the Wrongful Death Act together, we would necessarily conclude that Walpole is barred from pursuing his claim altogether because he is not the personal representative of his father's estate.

or otherwise, as a result of alleged malpractice on the part of a health care provider. Derivative claims include the claim of a parent or parents, guardian, trustee, child, relative, attorney, or any other representative of the patient including claims for loss of services, loss of consortium, expenses, and other similar claims.

Quite simply, the Medical Malpractice Act is plain and unambiguous as to the damages recoverable thereunder. Consequently, we may not construe these provisions of the Medical Malpractice Act with the Wrongful Death Act. *Cf. McKnight*, 493 N.E.2d at 777 ("When the meaning of a statute is plain and unambiguous, there is no room for judicial construction. The Medical Malpractice Act is plain and unambiguous in designating who qualifies as a representative and in designating those who are eligible to pursue derivative claims. The Medical Malpractice Act is also plain and unambiguous in designating that such claims can be for bodily injury or death.") (citation omitted).

Even if the Medical Malpractice Act were ambiguous in this regard, the Medical Malpractice Act and the Wrongful Death Act do not relate to the same general subject matter and are therefore not *in pari materia*. The Medical Malpractice Act governs claims arising from the malpractice of a certain class (health care providers), while the Wrongful Death Act governs claims arising from a certain type of harm (death). We simply cannot conclude that the two acts are *in pari materia*. *Cf. Mathis v. Coop. Vendors, Inc.*, 170 Ind.App. 659, 672–73, 354 N.E.2d 269, 277 (1976) ("Nor do we consider the Cigarette Tax Act and the Retail Tax Act to be *in pari materia*. It is true that both are excise taxes, and that both ultimately levy a tax on the retail purchaser of cigarettes. One, however, specifically levies 'a tax on *all cigarettes* sold, used, consumed, handled or distributed within this state ...,' while the other imposes a tax '*on transactions of retail merchants* constituting selling at retail....' (Emphasis supplied). One is a tax on a particular product, the other on a transaction. While the sales tax has the effect of increasing the price of a package of cigarettes, it is the buying/selling transaction that is being taxed, not the cigarettes themselves.") (citations omitted) *trans. denied*.

Moreover, even if the Medical Malpractice Act were ambiguous and *in pari materia* with the Wrongful Death Act, there would be no need to harmonize the two acts because they do not conflict. A claim arising from a death is properly brought under the Wrongful Death Act, unless the death was allegedly caused by a health care provider's malpractice, in which case the complaint *must* brought under the Medical Malpractice Act.[7] The two acts are mutually exclusive and do not conflict in any way.

■ Finally, even if the Medical Malpractice Act were ambiguous, *in pari*

---

7. We note that although the Medical Malpractice Act requires that all malpractice actions against health care providers (whether arising from death or injury) be brought under that act, the Wrongful Death Act does not specifically require that all actions arising from death be brought under that act. *Compare* Ind.Code § 34–18–8–4 ("[A]n action against a health care provider *may not be commenced* in a court in Indiana before ... the claimant's proposed complaint has been presented to a medical review panel ... and ... an opinion is given by the panel.") (emphasis added) *with* Ind.Code § 34–23–1–1 ("When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she, as the case may be, lived, against the latter for an injury for the same act or omission.").

*materia* with the Wrongful Death Act, and in conflict with it, we would nonetheless conclude that the damages provisions of the Medical Malpractice Act must apply in the instant case. "When two statutes on the same subject must be construed together, the court should attempt to give effect to both, however, where the two are repugnant in any of their provisions, *then the later statute will control and operate to repeal the earlier to the extent of the repugnancy*." *S.W. Forest Indus., Dunlap Div. v. Firth*, 435 N.E.2d 295, 297 (Ind.Ct. App.1982) (emphasis added). The General Assembly enacted the predecessor to the Wrongful Death Act in 1881 and the Medical Malpractice Act in 1975. *See* 1881(ss) Ind. Acts Ch. 38, § 8; 1975 Ind. Acts 146, § 1. Thus, the Medical Malpractice Act would control in any event.

In sum, Walpole's potential recovery for his claim under the Medical Malpractice Act is not limited by the damages provisions of the Wrongful Death Act. The Medical Malpractice Act plainly and unambiguously provides that Walpole may pursue claims for "loss of services, loss of consortium, expenses, and other similar claims." Ind.Code § 34–18–2–22.[8] Appellants' argument must fail.

Affirmed.

SHARPNACK, J., concurs with opinion.

BAKER, J., dissents with opinion.

SHARPNACK, Judge, concurring.

I concur with the lead opinion. However, I write separately to emphasize the relationship between the Indiana Medical Malpractice Act, Ind.Code § 34–18, ("MMPA") and the Indiana Wrongful Death Act, Ind.Code § 34–23–1, ("WDA"). The tort of wrongful death predates the MMPA and was created by the WDA. *See Gen. Motors Corp. v. Arnett*, 418 N.E.2d 546, 548 (Ind.Ct.App.1981) (noting that the "right to maintain an action for wrongful death is purely statutory and did not exist at common law"). The tort of wrongful death did not come about as a development in the common law as did the tort of medical malpractice. *Compare id.* (discussing the development of tort of wrongful death) *with Johnson v. St. Vincent Hosp., Inc.*, 273 Ind. 374, 387, 404 N.E.2d 585, 594 (1980) (discussing development of tort of medical malpractice), *abrogated on other grounds by Collins v. Day*, 644 N.E.2d 72 (Ind.1994). The WDA provided the cause of action and specified who could bring it, against whom it could be brought, what damages could be recovered, and for whose benefit those damages were recoverable. *See* I.C. § 34–23–1.

The tort of medical malpractice also predates the MMPA and came as a development of the common law. *See Johnson*, 273 Ind. at 387, 404 N.E.2d at 594 (noting that the relationship of health care provider and patient imposed a common law legal duty upon the health care provider). So, too, did derivative causes of action for loss of services, etc., for tortious injuries to spouses and children. *See Dearborn Fa-*

---

**8.** Our conclusion is consistent with our supreme court's disposition of a similar issue in *Goleski v. Fritz*, 768 N.E.2d 889 (Ind.2002). In *Goleski*, the decedent's widow, who was not the personal representative of her husband's estate, filed a proposed medical malpractice complaint with the Department of Insurance. The *Goleski* court determined that under Indiana Code Section 34–18–2–22, widow, as a "relative," could have pursued derivative claims for "lost financial support, love, affection, kindness, attention, companionship, and reasonable funeral and burial expenses." *Id.* at 891. Although the *Goleski* court did not directly address the issue of damages, it is worth noting that it did not refer to the Wrongful Death Act and relied entirely on the Medical Malpractice Act in determining the claims available to widow.

*bricating and Eng'g Corp., Inc. v. Wickham,* 551 N.E.2d 1135, 1136 (Ind.1990) (discussing a parent's common law claim for injuries to a child and a person's common law claim for injuries to a spouse). Children, at common law, have no claim for loss of services, etc., by reason of tortious injury to a parent. *See Dearborn Fabricating,* 551 N.E.2d at 1139 (holding that, at common law, a child "may not maintain an action for loss of parental consortium when the parent is negligently injured by a third person").

If this case were for the death or injury to Walpole's father caused by the tort of a negligent truck driver, Walpole would have no cause of action because he is a nondependent child and not the personal representative of the decedent. *See* I.C. § 34–23–1. However, Walpole brought this action under the MMPA. Thus, the issue is whether the MMPA created causes of action with respect to medical malpractice that did not exist before its adoption, or merely required that already recognized causes of action for death or injury by reason of medical malpractice be processed through the MMPA for purposes of determining liability and limiting damages.

The dissent in this case essentially comes to the conclusion this court came to, over dissent, in *Warrick Hosp., Inc. v. Wallace,* 435 N.E.2d 263 (Ind.Ct.App. 1982), an opinion authored by Judge Ratliff. There, a widow brought an action based on the death of her husband resulting from alleged medical malpractice on the part of the defendant. *Id.* at 265. She also claimed a loss of consortium and services for the time from her husband's admission to the defendant hospital until his death there some twelve days later. *Id.* The widow was not the personal representative of her husband's estate at the time she brought the action. *Id.* She was not appointed personal representative until more than a year later, and nearly three years after her husband's death. *Id.* Under the authority of *Gen. Motors Corp. v. Arnett,* 418 N.E.2d 546 (Ind.Ct.App.1981), the widow would have had no cause of action for the death of her husband by reason of failing to meet the requirement of becoming the personal representative and bringing the action in that capacity within two years of his death as required by the WDA. *Warrick,* 435 N.E.2d at 266.

Our court in *Warrick* put the issue as "[d]oes the Medical Malpractice Act create a cause of action for wrongful death separate and distinct from that created by the Wrongful Death Act?" *Id.* at 265. Our court held that:

The wrongful death statute was enacted to provide a remedy which did not exist at common law, that is, a cause of action for damages for death caused by the wrongful act of another. On the other hand, the Indiana Medical Malpractice Act was enacted to meet the problems of the rapidly escalating cost to physicians of malpractice insurance, the near unavailability of such coverage to physicians engaged in certain high risk specialties, and because "(h)ealth care providers had become fearful of the exposure to malpractice claims and at the same time were unable to obtain adequate malpractice insurance at reasonable prices." *Johnson v. St. Vincent Hospital, Inc.,* (1980) [273] Ind. [374], 404 N.E.2d 585, 589–90. The legislature thus responded to the vital needs of the community to preserve the availability of health care services to the citizens of this state. *Id.* The obvious purpose of the Medical Malpractice Act is to provide some measure of protection to health care providers from malpractice claims, thus to preserve the availability of such professional health care services to the community. *Sue Yee Lee v. La-*

*fayette Home Hospital, Inc.,* (1980) Ind. App., 410 N.E.2d 1319, *trans. denied.*

We do not believe that the Medical Malpractice Act (IC 16–9.5–1–1 et seq.) [9] created any separate cause of action for wrongful death or that the legislature intended to do so. The obvious purpose of the act was to protect health care providers from malpractice claims, *Sue Yee Lee v. Lafayette Home Hospital, Inc., supra,* not to create new and additional causes of action. Were it to create a separate cause of action it would increase the incidence of such claims rather than protect against them.

\* \* \* \* \*

We hereby hold that the right to prosecute a claim for wrongful death based upon medical malpractice is governed by the wrongful death statute with regard to the parties eligible to institute such proceeding, the persons for whose benefit recovery may be had, and the manner of distribution of such proceeds. We also hold that such a plaintiff must meet and comply with all conditions precedent necessary to bring such an action, specifically including being duly appointed as the patient's personal representative within two years of the date of death. We further hold that the procedural requirements of the Medical Malpractice Act, the filing of the proposed complaint and submission to the medical review panel, must be met if the defendant is a qualified health care provider under that act. Finally, we hold that the limitations on the amount of recovery in the Medical Malpractice Act apply to such a claim.

Since the claim for wrongful death here did not meet the required conditions precedent of the Wrongful Death Act in that Mary E. Wallace was not duly appointed personal representative of Clarence's estate within two years of his death, summary judgment should have been granted on this claim. Therefore, we reverse the trial court's judgment denying summary judgment on the wrongful death claim.

*Warrick,* 435 N.E.2d at 267–269. Judge Robertson dissented in *Warrick,* writing, *inter alia:*

I believe that language of IC 16–9.5–1–6 clearly authorizes Mary Wallace to maintain an action for wrongful death. The language provides that a "patient or his representative having a claim under this article for bodily injury or death" to file a complaint subject to the provisions of chapter nine. Mary Wallace is a "representative" within the definition of IC 16–9.5–1–1(f) by the nature of her marital relationship with the deceased. I do not accept the idea that the Legislature did not intend, the provisions of Medical Malpractice Act to apply where the patient died as a result of the alleged malpractice. The express use of the language "bodily injury or death" evidences an intent by the Legislature that IC 16–9.5–1–6 should apply when the patient dies. The majority opinion ignores the rule of statutory construction that, if possible, effect and meaning must be given to each word and that no part of a statute is to be held meaningless if that part can be reconciled with the rest of the statute. *Foremost Life Insurance Co. v. Department of Insurance,* (1980) [274] Ind. [181], 409 N.E.2d 1092.

*Warrick,* 435 N.E.2d at 272 (footnote omitted).

---

**9.** Repealed by Pub.L. No. 2–1993, § 209 and recodified as Ind.Code § 27–12, which was repealed by Pub.L. No. 1–1998, § 221 and recodified as Ind.Code § 34–18.

There things stood until 1986, when our supreme court decided *Cmty. Hosp. of Anderson and Madison County v. McKnight,* 493 N.E.2d 775, 776 (Ind.1986), *reh'g denied.* There, a widow and her son (it does not appear whether the son was a dependent or a minor) filed a proposed complaint under the MMPA. *Id.* at 776. Neither of them was acting as personal representative of the decedent. *Id.* The trial court denied the defendants' motion for summary judgment. *Id.* Our court, on the authority of *Warrick,* reversed. *See Cmty. Hosp. of Anderson and Madison County v. McKnight,* 482 N.E.2d 280 (Ind. Ct.App.1985), *reh'g denied.* Our supreme court granted transfer and vacated the court of appeals opinion. *See McKnight,* 493 N.E.2d at 777. In doing so, it wrote as follows:

The resolution of this case turns on whether a person pursuing a claim, which involves the death of a patient, against a health care provider must first be appointed personal representative under the Wrongful Death Statute, I.C. § 34–1–1–2. We hold that the clear language of the Medical Malpractice Act I.C. § 16–9.5–1–1 et seq. renders such a requirement unnecessary. The pertinent parts of the act are set forth here:

I.C. § 16–9.5–1–1(c)

(c) "Patient" means a natural person who receives or should have received health care from a licensed health care provider, under a contract, express or implied, and includes any and all persons having a claim of any kind, whether derivative or otherwise, as a result of alleged malpractice on the part of health care provider. Derivative claims include, but are not limited to, the claim of a parent or parents, guardian, trustee, child, relative attorney, or any other representative of such patient including claims for loss of services, loss of consortium, expenses and all such similar claims.

I.C. § 16–9.5–1–1(f)

(f) "Representative" means the spouse, parent, guardian, trustee, attorney, or other legal agent of the patient.

I.C. § 16–9.5–1–6

Subject to chapter 9 [of this article], a patient or his representative having a claim under this article for bodily injury or death on account of malpractice may file a complaint in any court of law having requisite jurisdiction and demand right of trial by jury. No dollar amount or figure shall be included in the demand in any malpractice complaint, but the prayer shall be for such damages as are reasonable in the premises. [I.C. § 16–9.5–1–6, as added by Acts 1975, P.L. 146, § 1.]

The above provisions clearly designate who is qualified to prosecute a claim. Plaintiffs–Appellees here fall within the scope of qualified persons: Lucille McKnight as spouse, and Shane Keith McKnight as child.

Defendants–Appellants argue that the above provisions should be construed in conjunction with the Wrongful Death Statute, I.C. § 34–1–1–2, and that such a construction supports a requirement that a plaintiff must first be appointed personal representative. Traditional rules of statutory construction do not support appellant's position.

When the meaning of a statute is plain and unambiguous, there is no room for judicial construction. *See State v. Jacobs* (1924), 194 Ind. 327, 142 N.E. 715. The Medical Malpractice Act is plain and unambiguous in designating who qualifies as a representative and in designating those who are eligible to pursue derivative claims. The Medical Malpractice Act is also plain and unambigu-

ous in designating that such claims can be for bodily injury or death.

\* \* \* \* \*

Appellants further argue that the provisions of the Medical Malpractice Act concerning a claim for death are dependent upon the estate distribution mechanisms inherent in the Wrongful Death Statute. Consequently, without the appointment of a personal representative to trigger the distribution mechanisms, it is impossible to determine the proper beneficiaries of a successful claim for death under the provisions of the Medical Malpractice Act. This argument has no merit. A trial court is particularly well suited to effect a just and proper distribution of damages if such distribution be necessary. Furthermore, the absence of distribution mechanisms in the Medical Malpractice Act does not render its definitions of those qualified to file a claim dependent on the Wrongful Death Statute.

To the extent that the holding in *Warrick Hospital, Inc. v. Wallace* (1982), Ind.App., 435 N.E.2d 263 conflicts with the holding here, it is expressly overruled.

*McKnight*, 493 N.E.2d at 776–777.

As I see it, *McKnight* is controlling here. One could argue that the widow and son would be the ones for whose benefit a wrongful death action could be brought, but it remains the case that neither of them, as individuals, could maintain a wrongful death action under the WDA. In *McKnight*, their right to proceed was based on the provisions of the MMPA. The plaintiff here is a child of the deceased patient. He falls within the provisions of the MMPA and may assert a claim for "loss of services, loss of consortium expenses, and all such similar claims." Ind. Code § 34–18–2–22. Therefore, I concur.

BAKER, Judge, dissenting.

I respectfully dissent from the majority's determination that Walpole—a non-dependent adult child—may recover non-pecuniary damages in this medical malpractice case. I cannot agree with the majority's view that the Wrongful Death and Medical Malpractice Acts "are mutually exclusive." Op. at 821. The Wrongful Death Act applies in such instances to bar plaintiffs other than surviving spouses and dependent next of kin from seeking non-pecuniary damages for loss of consortium, love, and services. Moreover, inasmuch as the Medical Malpractice Act mentions "derivative claims," it restricts them, bringing them within a regime that requires a medical review panel and award caps.

## I. Wrongful Death and Medical Malpractice Acts

I would note that no cause of action for wrongful death existed at common law. *Wolf v. Boren*, 685 N.E.2d 86, 87 (Ind.Ct. App.1997). With the passage of the first Wrongful Death Act in 1881, a cause of action was established such that a plaintiff could seek redress for the loss sustained by the death of another in certain circumstances. *Holmes v. ACandS*, 709 N.E.2d 36, 39 (Ind.Ct.App.1999). Our current Wrongful Death Act reads, in relevant part:

> When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefore against the latter, if the former might have maintained an action had he or she, as the case may be, lived, against the latter for an injury for the same act or omission.
>
> . . . .
>
> That part of the damages which is recovered for reasonable medical, hospital, fu-

neral and burial expense shall inure to the exclusive benefit of the decedent's estate for the payment thereof. The remainder of the damages, if any, shall, subject to the provisions of this article, inure to the exclusive benefit of the widow or widower, as the case may be, and to the *dependent children,* if any, or *dependent next of kin.*

Ind.Code § 34–23–1–1 (emphasis added). Thus, it is apparent to me that the plain language of the Wrongful Death Act *limits* recovery for non-pecuniary damages—the "remainder of the damages" mentioned in the statute—to surviving spouses and dependents when the person sustaining the injury died as a result of a tortfeasor's actions. *Necessary v. Inter–State Towing,* 697 N.E.2d 73, 76 (Ind.Ct.App.1998).

With the Wrongful Death Act already in existence, the General Assembly passed the Medical Malpractice Act in 1975, an Act whose policy was "one of limitation of liability." *Garrison v. Foy,* 486 N.E.2d 5, 9 (Ind.Ct.App.1985). Indeed, under our current Medical Malpractice Act, a plaintiff must first file a proposed complaint with the Indiana Department of Insurance. Ind.Code § 34–18–7–3. Then, either party may request the formation of a medical review panel to review the evidence of malpractice. I.C. § 34–18–10–2. The panel's decision, while not final, is persuasive. Finally, damages are capped, as any claimant may not recover more than $1.25 million. I.C. § 34–18–14–3. Quite simply, nothing in the text or legislative history of the Medical Malpractice Act indicates that an expansion of recovery for plaintiffs was envisioned by our General Assembly. It would be remarkably contrary to the intent of the Medical Malpractice Act if, as Walpole argues, that Act expanded the scope of liability.

In my view, a more reasonable reading of Indiana Code section 34–18–2–22 is the one voiced in *Warrick Hospital, Inc. v. Wallace,* 435 N.E.2d 263 (Ind.Ct.App. 1982). In *Wallace,* the decedent's wife sued the hospital for wrongful death and loss of consortium due to negligent medical treatment. However, the wife was not timely appointed as administratrix for her decedent's estate. The *Wallace* court first noted that the Medical Malpractice Act did not create "any separate cause of action for wrongful death or that the legislature intended to do so." *Id.* at 267. Thus, the *Wallace* court held that the wife's failure to be appointed administratrix was fatal to her claim because "the right to prosecute a claim for wrongful death based upon medical malpractice is governed by the wrongful death statute with regard to parties eligible to institute such [a] proceeding." *Id.* at 268. Moreover, the *Wallace* court stated that "the procedural requirements of the Medical Malpractice Act, the filing of the proposed complaint and submission to the medical review panel, must be met." *Id.*

A more reasonable reading of Indiana Code section 34–18–2–22 is that the Medical Malpractice Act "folds" the common law non-pecuniary derivative claims into the Medical Malpractice Act's administrative requirements and award caps. Thus, if a common law non-pecuniary derivative claim is brought by a "parent or parents, guardian, trustee, child, relative, attorney, or any other representative" of an injured patient that *still lives,* the plaintiff must adhere to the Medical Malpractice Act's procedures and cannot immediately bring a claim in court. I.C. § 34–18–2–22.

Moreover, at common law, no cause of action could be brought for non-pecuniary damages after the injured spouse—or "patient"—died. *Bemenderfer v. Williams,* 745 N.E.2d 212, 219 (Ind.2001) (holding that common law rule was that consortium damages were not recoverable after in-

jured spouse died). Thus, but for the Wrongful Death Act, claims for non-pecuniary damages would be barred. The Wrongful Death Act operates to allow non-pecuniary claims involving a *deceased* patient, but only spouses and dependents, going through the Medical Malpractice Act, may bring them. In sum, a plaintiff suing for a non-pecuniary derivative claim because an injury was done to a living patient is required to comply with the Medical Malpractice Act's procedures. Pursuant to the Wrongful Death Act, a non-pecuniary derivative claim for an injury suffered by a patient who died as a result of medical malpractice may be brought but only by a spouse or dependent.

The concurrence argues that *Community Hosp. of Anderson and Madison County v. McKnight*, 493 N.E.2d 775 (Ind.1986), is controlling. There, the wife and son of the decedent brought a medical malpractice action against the hospital. Neither wife nor son was appointed personal representative as required by the Wrongful Death Act. Thus, our supreme court noted that "the specific issue on appeal is whether the trial court erred in denying summary judgment where neither plaintiffs nor any other person or entity has been appointed as a personal representative authorized to prosecute a wrongful death claim." *Id.* at 776. The *McKnight* court allowed the wife's claim under the Medical Malpractice Act to continue, noting that the Medical Malpractice act was "plain and unambiguous in designating who qualifies as a representative and in designating those who are eligible to pursue derivative claims." *Id.* at 777. Here, by way of analogy, the concurrence claims that since Walpole falls under the provisions of the Medical Malpractice Act, he may assert a claim for loss of services and consortium. Op. at 822.

## II. Equal Privileges and Immunities

The majority's interpretation of the Medical Malpractice Act not only contravenes the intent behind that Act but violates Article I, Section 23 of our constitution. Under the majority's view, a non-dependent child would be allowed to sue medical providers for non-pecuniary damages if his father died because of the providers' malpractice. Yet, the same non-dependent child would be prohibited by the Wrongful Death Act from seeking non-pecuniary damages if a truck negligently ran over his father.

Article I, Section 23 of our constitution states that "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." Our supreme court announced a test to determine whether legislation violates Article I, Section 23 in *Collins v. Day*:

> First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. Finally, in determining whether a statute complies with or violates Section 23, courts must exercise substantial deference to legislative discretion.

644 N.E.2d 72, 80 (Ind.1994). In *Martin v. Richey*, our supreme court upheld the constitutionality of the Medical Malpractice Act against charges that it unreasonably treated medical malpractice victims different than victims of other torts:

> [T]his Court has held that a classification scheme which distinguishes between victims of medical malpractice and victims of other torts, or viewed from an-

other perspective, between health care providers and other tortfeasors, is *reasonably related to the goal of maintaining sufficient medical treatment and controlling malpractice insurance costs in Indiana,* and therefore is not unreasonable.

711 N.E.2d 1273, 1281 (Ind.1999) (emphasis added). In my view, the majority's opinion turns *Martin* on its head by *expanding* the recovery for victims of medical malpractice.

Moreover, the majority's opinion violates the first prong of *Collins.* In applying *Collins,* the *Martin* court held that the disparate treatment afforded to medical malpractice victims was rationally related to the goal of maintaining an adequate pool of medical professionals in Indiana and limiting insurance costs. *Id.* Here, the majority's decision to *expand* the liability of medical providers is rationally related to no expressed overarching goal [10] and in fact does violence to the goals stated in *Martin.* Simply put, the majority's interpretation of the Medical Malpractice Act in this circumstance unconstitutionally treats similarly situated persons differently and completely ignores a central tenet of *Martin.*

### III. *Goleski v. Fritz*

I also believe that an analysis of an additional case is warranted here, even though the majority has not discussed it in its opinion. Walpole argues that *Goleski v. Fritz,* 768 N.E.2d 889 (Ind.2002), establishes an independent claim for loss of consortium, love, and services. However, Walpole's reliance on *Goleski v. Fritz,* 768 N.E.2d 889 (Ind.2002), is misplaced. *Goleski* held that Dorothy Vetter—the deceased patient's wife—had a derivative

claim for loss of consortium *within the context of the Medical Malpractice Act. Id.* at 891. Dorothy's husband Lawrence allegedly died on account of the defendant's medical malpractice. Dorothy filed a proposed complaint with the Indiana Department of Insurance, yet she died before her case could be brought to a conclusion. *Id.* at 890. However, Goleski—Dorothy's daughter—was appointed administratrix of Dorothy's estate and argued that the cause of action survived Dorothy's death and became part of Dorothy's estate.

The trial court ruled that Goleski could not maintain the action for loss of consortium. The Wrongful Death Act provided no cause of action, the trial court held, because Goleski was not the personal representative of Lawrence's estate. The trial court also held that the Medical Malpractice Act provided no help for Goleski because she was not Lawrence's "representative" as that word was defined in the Medical Malpractice Act. Our supreme court reversed the trial court, holding that, as a relative, *Dorothy* had a "derivative" claim for loss of consortium and that Indiana's survival statute operated to preserve that "derivative" claim. *Id.* at 891–92. Thus, the "derivative" claim passed to Dorothy's estate. Goleski was free to bring the claim as administratrix of Dorothy's estate *but not in her own name. Id.* at 892. In sum, our supreme court's opinion is nothing more than an affirmation that the Medical Malpractice Act allows non-pecuniary awards to spouses of deceased patients and that such actions survive the death of the spouse. *Goleski* does not apply here because Walpole is not a spouse, as was Dorothy, or a dependent child. Furthermore, there is no question

---

**10.** While the desire to compensate victims of medical malpractice is certainly a legitimate goal, decisions balancing the needs to compensate tort victims and to preserve the cost and availability of medical care are best left to the political branches of government.

regarding the survivability of an action, as was the case in *Goleski*.

Inasmuch as the majority's view has the potential of creating certain anomalous results in these circumstances, is contrary to the public policy embodied in our Medical Malpractice Act, and violates Article I, Section 23 of our state constitution, I dissent and therefore vote to reverse the denial of the appellants' motion for preliminary determination.